**UNITED STATES of America, Plaintiff,**

v.

**Virginia L. FERRARA, Chief Disciplinary Counsel of the Disciplinary Board of the Supreme Court of New Mexico, Defendant.**

Civ. A. No. 92–2869.

United States District Court,
District of Columbia.

May 28, 1993.

Charles Francis Flynn, Asst. U.S. Atty., Washington, DC, Timothy Patrick Garren, U.S. Dept. of Justice, Civ. Div., Torts Branch, Washington, DC, for plaintiff.

Mark W. Foster, Norman L. Eisen, William W. Taylor, III, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

NORMA HOLLOWAY JOHNSON, District Judge.

The United States has brought this action against defendant Virginia L. Ferrara, Chief Disciplinary Counsel of the Disciplinary Board of the Supreme Court of New Mexico, to enjoin an inquiry by the Disciplinary Board into the conduct of Assistant United States Attorney John Doe. Currently pending before the Court is defendant's motion to dismiss the complaint, as well as the parties' cross-motions for summary judgment. Upon consideration of the motions, the supporting memoranda of the parties, the entire record herein, and for the reasons outlined below, the Court will grant defendant's motion to dismiss the complaint.

## BACKGROUND

John Doe [1] is an Assistant United States Attorney ("AUSA") employed by the Office of the United States Attorney for the District of Columbia. He is licensed to practice law in the state of New Mexico. In 1988, Doe prosecuted a criminal defendant, Darryl J. Smith, in the Superior Court for the District of Columbia. Smith was represented by counsel from the Public Defender's office. On a number of occasions during the course of the prosecution, from September through November 1988, Doe and D.C. Metropolitan Police detective Donald R. Gossage were contacted by Smith and spoke with him, without the knowledge or consent of Smith's counsel.

When Smith's attorney learned of these communications, she objected and filed a motion to dismiss the indictment against her client. Although the Superior Court denied Smith's motion, it nevertheless referred the matter to the District of Columbia Bar Counsel of the Board on Professional Responsibility ("D.C.Bar Counsel"), for possible disciplinary proceedings against Doe on the grounds that he had violated Rule 7–104(A)(1) of the D.C.Code of Professional Responsibility. Because Doe was not a member of the D.C. bar at the time of his alleged violation, the D.C. Bar Counsel referred the matter to the Disciplinary Board of the Supreme Court of New Mexico ("Disciplinary Board"), where Doe was licensed to practice law.

On August 27, 1990, defendant Ferrara filed a specification of charges before the Disciplinary Board, alleging that Doe violated Rules 16–402, 16–804(A), and 16–804(D) of the New Mexico Rules of Professional Conduct, as well as Rules 7–104(A)(1) and 1–102(A)(2) of the District of Columbia Code of Professional Responsibility. These violations allegedly arose out of Doe's communication with an adverse party known to be represented by counsel without the consent of that counsel. *See* Stipulation of Charges, Exhibit A to Plaintiff's Motion for Summary Judgment (hereinafter "Pl. S.J.").

On August 28, 1990, Doe sought to remove the disciplinary action to the United States District Court for the District of New Mexico, under 28 U.S.C. § 1442(a)(1). The district court held that it had no jurisdiction under § 1442(a)(1) because a disciplinary proceeding before a state bar disciplinary board was neither a "civil action" nor a "criminal prosecution," within the meaning of that statute. *See Matter of Doe,* 801 F.Supp. 478 (D.N.M.1992). The court also stated that no colorable federal defense to the disciplinary action existed, to support removal under § 1442. Accordingly, it remanded the action to the Disciplinary Board for further proceedings.

The United States subsequently filed the instant case in this jurisdiction. The case originally came in on plaintiff's motion for preliminary injunction. After briefing on the motion for preliminary injunction, as well as an oral hearing on the motion, this Court granted plaintiff's motion. By Order dated February 8, 1993, the Court enjoined defendant Ferrara from proceeding with the disciplinary action against Doe before the New Mexico Disciplinary Board, during the pendency of this action. The case has now been fully briefed and is ripe for consideration on its merits.

## DISCUSSION

Defendant has moved to dismiss the complaint in this case on four grounds. First, defendant argues that the court lacks personal jurisdiction over her. Second, she claims that, because the United States District Court for the District of New Mexico already considered and rejected Doe's Supremacy Clause arguments, principles of collateral estoppel and res judicata preclude this Court's reconsideration of those arguments. Third, defendant asserts that the Court should abstain, under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), from taking any action on the merits of this case pending conclusion of the disciplinary proceedings against Doe in New Mexico. Finally, defendant maintains that venue is improper in the District of Columbia.

---

1. "John Doe" is a pseudonym used to protect the privacy of the Assistant United States Attorney involved in this case.

Both plaintiff and defendant have also moved for summary judgment in this case. At issue in the motions for summary judgment is whether the Supremacy Clause would be violated by allowing the disciplinary proceeding in New Mexico to go forward.

### 1. *Personal Jurisdiction*

Under the long-arm statute of the District of Columbia, an individual becomes subject to the jurisdiction of a District of Columbia court by "transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1). The "transacting business" provision has been interpreted to be as far-reaching as the due process clause allows. *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974 (D.C.Cir.1990) (citing *Hummel v. Koehler*, 458 A.2d 1187, 1190 (D.C.1983)).

In order for a court to exercise personal jurisdiction over a nonresident defendant, due process requires that the nonresident defendant have certain minimum contacts with the forum so the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). More specifically, there must be some act by which the defendant purposely avails himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of its laws, before she can be haled into court. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *accord Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Defendant claims she has insufficient contacts with the District of Columbia to satisfy the constitutional minimum required by *International Shoe* for the exercise of personal jurisdiction. She points out that her only place of business is in New Mexico; she is neither licensed to do business in the District of Columbia, nor does she maintain an office here. What defendant has done is to initiate and supervise disciplinary proceedings against AUSA Doe in the state of New Mexico, thereby performing her duties as Chief Disciplinary Counsel of the Board.

Plaintiff correctly points out that due process does not require a defendant actually to enter a forum in order to establish sufficient contacts with that forum to support personal jurisdiction. Where a defendant deliberately takes certain actions with an intended effect in another jurisdiction, that defendant should "reasonably anticipate being haled into court" in that jurisdiction. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *see also Calder v. Jones*, 465 U.S. 783, 789–91, 104 S.Ct. 1482, 1487–88, 79 L.Ed.2d 804 (1984). In *Calder*, the Supreme Court held that a California state court could exercise jurisdiction over defendants who resided in Florida, where defendants had written and edited an allegedly slanderous magazine article that they knew would have a potentially devastating impact upon the subject of the article, who resided in California. The Supreme Court pointed out, not only that the article was drawn from California sources, but that "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered." *Id.* at 789, 104 S.Ct. at 1487.

Plaintiff argues that the District of Columbia is a similar focal point in this case. The Court does not agree. While it may be true that the disciplinary action against Doe is based upon conduct which occurred in this jurisdiction, the Court cannot find, as plaintiff urges, that "defendant has purposefully directed her conduct at this jurisdiction...." Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter "Pl.Opp. to M.D."), at 8. Plaintiff asserts that, by proceeding with the disciplinary action in New Mexico, defendant is "essentially establishing standards for the investigation and prosecution of crimes in this jurisdiction." *Id.* However, any effect that defendant's enforcement of the rules of ethical conduct for the New Mexico bar has on the District of Columbia is, in this case, incidental, not deliberate. By seeking to discipline Doe, defendant is not "expressly

aim[ing]" her actions at the District of Columbia. *Calder,* 465 U.S. at 789, 104 S.Ct. at 1487. Rather, her intent is to uphold and enforce the ethical standards of the bar of New Mexico. The simple fact that, in doing so, defendant may influence the way a particular prosecution is handled by an AUSA in the District of Columbia does not transform her actions into a deliberate effort to set standards for such prosecutions in the District.[2]

■ Moreover, the connection plaintiff seeks to establish between the New Mexico disciplinary proceeding and the District of Columbia is a connection based entirely on the unilateral actions and decisions of Doe and the government, not defendant. In general, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Here, it was Doe who chose to practice law in the District of Columbia, and it is the government which chooses to permit its attorneys to be licensed in jurisdictions other than where they practice. While the Court can understand the practical necessity underlying the government's decision, it must nevertheless conclude that whatever harm may result from the disciplinary proceeding does not devolve from *defendant's* actions.

Were the Court to adopt the approach urged by plaintiff, it would endorse an interpretation of personal jurisdiction under which defendant—and, for that matter, any state seeking to enforce its disciplinary rules against members of its bar—could potentially be subjected to suit in any other state where its licensed attorneys chose to practice. The

Court is unwilling to establish such a broad-sweeping principle.

### 2. *Supremacy Clause*

■ Even if this Court were to find that it had personal jurisdiction over defendant, for purposes of reaching the merits of this case [3], it would conclude that the Supremacy Clause is no impediment to the maintenance of a disciplinary proceeding against Doe by the Disciplinary Board of New Mexico.

■ The Supremacy Clause, found at Article VI, clause 2 of the Constitution, states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The fundamental principle underlying the Supremacy Clause is that conflicts between federal and state power are to be resolved in favor of the federal government. Two separate doctrines have developed under this principle. Under the first, known as the preemption doctrine, where a conflict between federal and state law exists, state law is nullified to the extent that it actually conflicts with federal law. *See Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). The second doctrine, known as the doctrine of intergovernmental immunities, establishes that, even in the absence of a specific federal law, federal officers are immune from state interference with acts "necessary and proper" to the accomplishment of their federal duties. *See In Re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890).

2. Plaintiff's argument that defendant has maintained a "continuing obligation" with Doe while he practices law in the District of Columbia, by formally regulating that practice, is also misplaced. Plaintiff states that Doe is required to file an annual registration statement with the New Mexico bar, to comply with New Mexico rules for continuing legal education, and to pay an annual licensing fee. Pl.Opp. to M.D., at 11. However, as defendant notes, even if this were sufficient activity to establish a "continuing obligation," it does not establish jurisdiction over

defendant, because she is not involved in these regulatory activities. Rather, these activities are dictated by the Supreme Court of New Mexico. Defendant's Reply in Support of Motion to Dismiss, at 5.

3. The Court finds that the other bases urged by defendant for dismissal of this action—collateral estoppel, abstention, and improper venue—lack merit, for the reasons stated in plaintiff's opposition.

Plaintiff argues that Doe's conduct was authorized by a directive issued to Department of Justice attorneys by Attorney General Richard Thornburgh ("the Thornburgh memorandum"), in June 1989. The Thornburgh memorandum states as follows:

> ... [I]t is the Department's position that contact with a represented individual in the course of authorized law enforcement activity does not violate [Disciplinary Rule 7–104 of the ABA Model Code of Professional Conduct]. The Department will resist, on Supremacy Clause grounds, local attempts to curb legitimate federal law enforcement techniques.

Memorandum from Dick Thornburgh to All Justice Department Litigators, June 8, 1989, attached as Exhibit F to Pl. S.J., at 7.

■ The Court cannot agree with plaintiff that the Thornburgh memorandum constitutes "federal law," for purposes of preempting state regulation of attorney ethics. To begin with, the memorandum did not issue until June 1989, well over six months after the alleged ethical misconduct by AUSA Doe. More importantly, a policy memorandum issued by the head of an executive agency simply is not the equivalent of "federal law." Under the preemption doctrine, plaintiff bears a heavy burden of demonstrating that state regulation has been superseded by federal law; in the absence of a "clear and manifest purpose of Congress," courts should be wary of interfering with the historic police powers of the states. *See Hillsborough*, 471 U.S. at 715, 105 S.Ct. at 2376. No such "clear and manifest purpose of Congress" has been asserted by plaintiff. Nor does the Thornburgh memorandum have the effect of law required to preempt state regulation. The memorandum was neither promulgated pursuant to notice and comment rulemaking nor published in the Federal Register. It is no more than a unilateral statement of Justice Department policy by the Attorney General. The Court cannot accept this as "federal law" sufficient to supplant state regulation under the Supremacy Clause. *Cf. Wabash Valley Power v. Rural*

*Electrification Admin.*, 903 F.2d 445, 454 (7th Cir.1990) ("We have not found any case holding that a federal agency may preempt state law without either rulemaking or adjudication.")

Alternatively, plaintiff argues that the doctrine of intergovernmental immunity protects Doe's conduct from state regulation. However, as plaintiff concedes, state law is nullified under this doctrine only when "there is a conflict between state law and conduct that is *necessary and proper* to the performance of a federal duty." Pl. S.J., at 4 (emphasis added). The Court simply cannot find AUSA Doe's violation of state ethical requirements "necessary and proper" to the performance of his duties as a federal prosecutor. Plaintiff has not claimed that, without the *ex parte* statements made by the criminal defendant to Doe, Doe would have been unable to prosecute successfully. Plaintiff has not offered anything to convince this Court that Doe's continuation of *ex parte* communications was either necessary or proper.

■ Furthermore, even if Doe's conduct could be seen as "necessary and proper," it appears that Congress intended federal lawyers to be subject to regulation by the state bars of which they are members. The Department of Justice Appropriation Authorization Act ("DOJ Act") requires all attorneys in the Department of Justice to "be duly licensed and authorized to practice as an attorney under the laws of a State, territory, or the District of Columbia." *See* Pub.L. No. 96–132, 93 Stat. 1040, 1044 (1979) (appropriations for fiscal year 1980); *see also* Pub.L. No. 102–395, 106 Stat. 1828, 1838, § 102(a) (1992) (appropriations for fiscal year 1993, reenacting provisions of Pub.L. 96–132). To be "duly licensed and authorized to practice as an attorney," a member of a state bar must of necessity comply with that state's code of professional responsibility. Congress therefore clearly contemplated compliance with state bar ethical standards by attorneys practicing in the Department of Justice.[4]

---

4. Plaintiff argues that standard principles of statutory construction require substantive provisions in appropriation acts to be construed narrowly rather than broadly. Plaintiff relies on a recent case from this Circuit, *Building and Constr. Trades Dep't, AFL–CIO v. Martin*, 961 F.2d 269, 273 (D.C.Cir.1992), for the following proposition: "While appropriation acts are 'Acts of Congress'

Because state regulation of the federal function is here authorized by Congress, this Court will not interfere with that regulation. *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2012–13, 48 L.Ed.2d 555 (1976). Thus, if the Court were to reach the merits of this case, it would conclude that no Supremacy Clause violation exists.

## CONCLUSION

The Court concludes that it lacks personal jurisdiction over defendant. Defendant's motion to dismiss the complaint will therefore be granted.

which can substantively change existing law, there is a very strong presumption that they do not...." However, the fact remains that the DOJ Act does not "substantively change existing law." Plaintiff has pointed to no statute preexisting the DOJ Act which exempted Department of Justice attorneys from state disciplinary requirements.