54 F.3d 825
 311 U.S.App.D.C. 421
 UNITED STATES of America, Appellant/Cross-Appellee,
v.
Virginia L. FERRARA, in her official capacity as the Chief
Disciplinary Counsel of the Disciplinary Board of
the Supreme Court of New Mexico,
Appellee/Cross-Appellant.
 Nos. 93-5233, 93-5250.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 8, 1994.
Decided May 19, 1995.
As Amended July 28, 1995.
 
 Douglas Letter, Atty., U.S. Dept. of Justice, with whom Asst. Atty. Gen. Frank W. Hunger and Eric H. Holder, Jr., U.S. Atty., Washington, DC, were on the briefs, for appellant/cross-appellee U.S. of America. Thomas M. Bondy, John C. Hoyle, and Barbara L. Herwig, Washington, DC, entered appearances, for U.S.
 William W. Taylor, III, with whom Mark W. Foster, Norman L. Eisen, Washington, DC, and Tom Udall, Santa Fe, NM, were on the brief, for appellee/cross-appellant Ferrara.
 Before SILBERMAN, BUCKLEY, and SENTELLE, Circuit Judges.
 Concurring opinion filed by Circuit Judge SILBERMAN.
 BUCKLEY, Circuit Judge:
 
 
 1
 Acting in her official capacity as the Chief Counsel of the Disciplinary Board of the New Mexico Supreme Court, appellee Virginia Ferrara charged "John Doe," an attorney licensed to practice law by the New Mexico Supreme Court, with violating New Mexico's Rules of Professional Conduct based on his activities while employed as an Assistant United States Attorney in Washington, D.C. In this action, the United States seeks both an injunction preventing Ms. Ferrara from taking further action against Mr. Doe and a declaratory judgment that the Constitution's Supremacy Clause prohibits her from taking any adverse action against attorneys employed by the United States Department of Justice based on the performance of their federal duties. District Judge Norma Holloway Johnson dismissed the complaint for lack of personal jurisdiction over Ms. Ferrara. We affirm.
 
 I. BACKGROUND
 A. The Conduct Giving Rise to the Dispute
 
 2
 In 1988, while employed by the United States Attorney's Office for the District of Columbia, Mr. Doe represented the United States in a murder prosecution brought in the D.C. Superior Court. On a number of occasions, Mr. Doe or the detective investigating the case allegedly communicated with the suspect, Darryl Smith, without the permission of Mr. Smith's attorney. The Government claims that all the contacts were initiated by Mr. Smith and that Mr. Doe's supervisors at the United States Attorney's Office authorized him to receive Mr. Smith's calls.
 
 
 3
 Mr. Smith was subsequently indicted for murder. His attorney charged prosecutorial misconduct and asked the Superior Court to suppress statements made by Mr. Smith to Mr. Doe and his investigator. The court refused to suppress the statements, but it did find that Mr. Doe had violated a D.C. rule of professional conduct prohibiting lawyers from communicating with a party known to be represented by counsel without that counsel's consent, and it referred the issue to the District of Columbia Bar Counsel's Board on Professional Responsibility for its consideration of disciplinary action.
 
 B. The New Mexico Proceedings
 
 4
 Congress requires that Assistant United States Attorneys, as well as other attorneys employed by the Department of Justice, be licensed to practice law by a State, territory, or the District of Columbia, but not necessarily by the jurisdictions in which they practice. Department of Justice Appropriation Authorization Act, Fiscal Year 1980, Pub.L. No. 96-132, Sec. 3(a), 93 Stat. 1040, 1044 (1979); Department of Justice Appropriation Act of 1988, Pub.L. No. 100-202, Sec. 204(a), 101 Stat. 1329-8, 1329-15 (1987); 28 U.S.C. Sec. 517 (1988). During the relevant period, Mr. Doe was licensed to practice law by New Mexico but not by the District of Columbia. The D.C. Board on Professional Responsibility determined that, although Mr. Doe practiced in the D.C. court system, it lacked jurisdiction to discipline him. As a consequence, it referred the matter to Ms. Ferrara in Albuquerque, New Mexico, in her capacity as Chief Disciplinary Counsel of the Disciplinary Board of the Supreme Court of New Mexico ("Disciplinary Board"), which was responsible for overseeing the New Mexico Bar.
 
 
 5
 On August 22, 1990, Ms. Ferrara filed charges with the Board in which she alleged that Mr. Doe had engaged in conduct that violated the professional standards required by New Mexico and the District of Columbia. The New Mexico Rules of Professional Conduct provide that
 
 
 6
 [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.
 
 
 7
 N.M. Rules Prof. Conduct Sec. 16-402 (1986). In addition, the Rules specifically provide that
 
 
 8
 [a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.
 
 
 9
 Id. Sec. 16-805 (1986).
 
 
 10
 Mr. Doe, who was represented by the United States, removed the proceeding to the U.S. District Court for the District of New Mexico pursuant to 28 U.S.C. Sec. 1442, which permits a federal officer to remove a civil suit or criminal prosecution brought against him in a state court for actions taken under color of his office to the federal court in the district in which the state action is pending. 28 U.S.C. Sec. 1442(a)(1) (1988). The New Mexico Disciplinary Board moved for a remand to the state forum. In re Doe, 801 F.Supp. 478, 481 (D.N.M.1992). Finding that it lacked jurisdiction under section 1442, the district court granted the motion. Id.
 
 
 11
 The court provided two alternative reasons why section 1442 did not provide federal jurisdiction over the charges brought by Ms. Ferrara against Mr. Doe. First, it noted that section 1442 applies only to "civil actions" or "criminal prosecutions" and determined that the disciplinary proceedings were regulatory in nature and did not qualify as either. Id. at 481-84. Second, it found that to remove a case under section 1442, the movant must allege a colorable federal defense; and it ruled that Mr. Doe's defenses to the disciplinary action (including his argument that the Constitution's Supremacy Clause prevented New Mexico from enforcing ethical rules inconsistent with a federal prosecutor's duties) "[we]re not supported by law." Id. at 484.
 
 C. The Present Proceedings
 
 12
 Following the remand of the Doe disciplinary proceedings to New Mexico, the United States brought suit against Ms. Ferrara, in her official capacity, in the District Court for the District of Columbia. In this action, it sought both an injunction prohibiting her from proceeding with the prosecution of Mr. Doe and a declaration that the Supremacy Clause prohibits her from taking any action against a Department of Justice employee for the performance of his duties consistent with federal law. The Government argued, as did Mr. Doe in the removal proceeding, that the Supremacy Clause prevents state officials from regulating the conduct of federal prosecutors when such regulation would conflict with their federal duties.
 
 
 13
 Ms. Ferrara moved to dismiss, arguing that the district court lacked personal jurisdiction over her, that the venue was improper, that the Government was collaterally estopped from making its Supremacy Clause argument as a result of the New Mexico district court decision, and that the court should abstain pending the outcome of the New Mexico disciplinary proceedings against Mr. Doe. United States v. Ferrara, 847 F.Supp. 964, 966 (D.D.C.1993). Although Judge Johnson determined that Ms. Ferrara's venue, collateral estoppel, and abstention arguments were meritless, she granted the motion to dismiss for want of personal jurisdiction. Id. at 967-68 & n. 3.
 
 
 14
 The United States now appeals, renewing its Supremacy Clause claim and arguing that the district court did, in fact, have personal jurisdiction over Ms. Ferrara. Ms. Ferrara cross-appeals, claiming that the court erred by failing to recognize the merits of her collateral estoppel and abstention arguments. Because we agree that the district court lacked personal jurisdiction over Ms. Ferrara, we will address neither the issues raised by her in her cross-appeal nor the Supremacy Clause argument advanced by the Government.
 
 II. PERSONAL JURISDICTION
 A. "Minimum Contacts" Analysis
 
 15
 A personal jurisdiction analysis requires that a court determine whether jurisdiction over a party is proper under the applicable local long-arm statute and whether it accords with the demands of due process. See, e.g., Founding Church of Scientology of Washington, D.C. v. Verlag, 536 F.2d 429, 432 (D.C.Cir.1976). As there is no applicable federal long-arm statute, jurisdiction over Ms. Ferrara must be determined by reference to District of Columbia law. Edmond v. United States Postal Service General Counsel, 949 F.2d 415, 424 (D.C.Cir.1991). The District of Columbia Code provides, in relevant part, that
 
 
 16
 (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
 
 
 17
 (1) transacting any business in the District of Columbia....
 
 
 18
 D.C.Code Ann. Sec. 13-423 (1981).
 
 
 19
 With limited exceptions, the Code's "transacting any business" clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause. Hummel v. Koehler, 458 A.2d 1187, 1190 (D.C.App.1983); see also Reuber v. United States, 750 F.2d 1039, 1050 n. 13 (D.C.Cir.1984). Consequently, the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry here.
 
 
 20
 A court's jurisdiction over a defendant satisfies the demands of due process when there are "minimum contacts" between the defendant and the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotation marks omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
 
 
 21
 The district court determined that it lacked jurisdiction over Ms. Ferrara because any connection between her disciplinary actions and the District arose from Mr. Doe's unilateral acts and did not reflect an intent on her part to determine how prosecutions were to be conducted there. Ferrara, 847 F.Supp. at 967-68. The Government contends that this was error for two reasons: (1) Ms. Ferrara's actions had a direct effect in the District of Columbia sufficient in itself to permit jurisdiction over her; and (2) the New Mexico Supreme Court, which Ms. Ferrara represents, had created "continuing obligations" between itself and the District.
 
 
 22
 To support its primary proposition, the Government relies exclusively on Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In Calder, the Supreme Court held that a California court had jurisdiction over a Florida writer and editor in a libel action arising out of an article concerning a California celebrity that was published in a national journal. Id. at 784-86, 104 S.Ct. at 1484-85. The Court determined that about 600,000 copies of the publication were sold in California, id. at 785, 104 S.Ct. at 1484, and that jurisdiction was proper based on the "effects" in California of their Florida-based conduct. Id. at 789-90, 104 S.Ct. at 1487. In so ruling, the Court observed that the defendants' allegedly tortious actions were "expressly aimed" at California; that they knew that the article "would have a potentially devastating impact" on its subject in California, id. at 789, 104 S.Ct. at 1487, and that, under these circumstances, they should have anticipated being "haled into court" in that State. Id. at 790, 104 S.Ct. at 1487. The Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id.; see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (jurisdiction proper even absent physical contact with forum where defendant's efforts were "purposefully directed" toward residents of another State).
 
 
 23
 The Government likens Ms. Ferrara to the Calder defendants. It argues that Ms. Ferrara has not only acted on the basis of activities that occurred in the District of Columbia but also seeks to regulate the activities of the United States and Mr. Doe in the District, which is where the brunt of the harm will be suffered.
 
 
 24
 Ms. Ferrara maintains that the more relevant precedent is provided by cases in which an agreement is reached by parties residing in one jurisdiction before one of them moves away and attempts to bring suit in a new forum. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), a Pennsylvania resident established a trust instrument naming a Delaware trust company as trustee. Id. at 238, 78 S.Ct. at 1231. She then moved to Florida, where she remained until she died a number of years later. Id. at 239, 78 S.Ct. at 1232. Some of her heirs subsequently attempted to sue the trustee, among others, in a Florida court. Id. at 240-41, 78 S.Ct. at 1232-33. The Supreme Court found there was no jurisdiction in Florida because "[t]he cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." Id. at 251, 78 S.Ct. at 1238. The Court emphasized that the trustee performed no acts in Florida and that that State had no relationship to the underlying trust agreement until the original trust settlor moved there. Id. at 252, 78 S.Ct. at 1239.
 
 
 25
 In World-Wide Volkswagen, a New York couple purchased a car from a New York automobile dealer. 444 U.S. at 288, 100 S.Ct. at 562. The following year, while driving to their new home in Arizona, they suffered an accident in Oklahoma, where they attempted to bring suit against the New York dealer and its New York-based distributor, whose sales were limited to dealers located in New York, New Jersey, and Connecticut. Id. at 288-89, 100 S.Ct. at 562-63. The Court noted that it was foreseeable that the purchasers might drive the car to Oklahoma, but found the foreseeability that they might be harmed there an insufficient basis for conferring jurisdiction over the dealer and distributor. Id. at 298, 100 S.Ct. at 567-68. Quoting Hanson, the Court reaffirmed that the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id.
 
 
 26
 Ms. Ferrara stresses that any connection between the District of Columbia and herself was proximately caused by Mr. Doe's unilateral decision to use his New Mexico license there. She argues that Calder does not apply here because the Calder defendants chose to establish their contact with California. In her view, the most important fact in this case is that her investigation of the misconduct would have no effect in the District of Columbia but for Mr. Doe's unilateral decision to practice law here.
 
 
 27
 We agree with Ms. Ferrara but believe her analysis fails adequately to describe the precise jurisdictional problem in this case. In Calder, the plaintiff was living and working in California at the time the defendants wrote and published the article that they knew would cause him injury in that State. The critical difference between this case and Calder is that here the relationship between Mr. Doe and the New Mexico Disciplinary Board that gave rise to the litigation predated Mr. Doe's unilateral decision to practice law in the District of Columbia. That relationship imposed certain professional obligations on Mr. Doe that he was obliged to observe as long as he held himself out as licensed to practice law by the State of New Mexico, regardless of his domicile.
 
 
 28
 The analytic flaw in the Government's reasoning is that it evaluates the disciplinary proceedings against Mr. Doe without due consideration of this preexisting relationship. Under the terms of that relationship, the New Mexico Supreme Court agreed to license Mr. Doe but reserved the right to discipline him should he later be found to have violated its rules. As noted above, those rules specifically provide that licensees practicing law out of state continue to be subject to the Disciplinary Board's authority. Given her responsibilities as the Board's Chief Counsel, Ms. Ferrara had an obligation to the State and to other members of the New Mexico Bar to uphold its standards by investigating charges of professional misconduct committed by a member, wherever the misconduct might occur.
 
 
 29
 As the district court correctly noted, Ms. Ferrara's purpose in initiating proceedings against Mr. Doe was to uphold the ethical standards of the New Mexico Bar, not to set standards for or direct the behavior of prosecutors in the District of Columbia. See Ferrara, 847 F.Supp. at 968. Thus, unlike the Calder defendants, her actions were not "expressly aim[ed]" at the forum, and their effects on the District of Columbia were, at most, incidental. See id. at 967-68. Nor could she expect to be haled before a court in the District merely because proceedings initiated by her in New Mexico in the discharge of her duties as an officer of the Supreme Court of that State might affect a member of the New Mexico Bar who had chosen to practice in the District.
 
 
 30
 The United States argues, nevertheless, that the New Mexico Supreme Court has created "continuing obligations" between itself and the District of Columbia that will support a finding of minimum contacts between Ms. Ferrara and the forum that are sufficient to support jurisdiction. This claim is based on a passage in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), in which the Supreme Court refers to the creation of "continuing obligations" between a defendant and residents of a forum. Id. at 476, 105 S.Ct. at 2184. The Government points out that even though Mr. Doe is a resident of the District, he must provide the New Mexico Bar with updated personal information, including his place of employment, and remit an annual license fee. It contends that these administrative contacts may be considered in assessing whether the District has personal jurisdiction over Ms. Ferrara, a point that she contests on the basis that these obligations have no relation to her personally.
 
 
 31
 Assuming arguendo that contacts between the District of Columbia and the New Mexico Supreme Court may be attributed to Ms. Ferrara because she acts as an agent for that body, the continuing administrative obligations cited by the United States are not of the kind that the Supreme Court had in mind in Burger King. In that case, the Supreme Court noted that
 
 
 32
 it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contact can defeat personal jurisdiction there.
 
 
 33
 471 U.S. at 476, 105 S.Ct. at 2184 (internal quotation marks and citations omitted). Thus, for example, the Court has held that a Nebraska insurance association that solicited the membership of Virginia residents by mail and established continuing obligations with them could be regulated by a Virginia State agency. Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648-49, 70 S.Ct. 927, 930, 94 L.Ed. 1154 (1950).
 
 
 34
 It should be noted that the Court based its findings of jurisdiction in Burger King and Travelers Health on qualitatively significant contacts with the forum State. In the first case, it observed that the appellee, a Michigan resident who had entered into a franchise agreement by mail with Burger King's Florida headquarters, had accepted "the long-term and exacting regulation of his business from Burger King's Miami headquarters" and that his breach of his contractual obligations to make payments in Miami "caused foreseeable injuries to the corporation in Florida." Burger King, 471 U.S. at 480, 105 S.Ct. at 2186. In the latter case, the Court noted that Travelers Health had created continuing obligations with respect to Virginia residents and had availed itself of the Virginia courts to seek their enforcement. Travelers Health, 339 U.S. at 648, 70 S.Ct. at 930.
 
 
 35
 These cases have little in common with the one at hand. Mr. Doe's continuing obligation to report his whereabouts to the New Mexico Supreme Court and to pay his annual dues was not the result of the latter's pursuit of contacts within the District of Columbia; rather, the obligation was undertaken by him before his unilateral decision to move to the District. Nor has the New Mexico Supreme Court sought the "benefits and protections" of the District's laws. The Court cannot be said to have availed itself of the privilege of conducting business in the District merely because it did not end its relationship with Mr. Doe when he moved there.
 
 
 36
 Finally, the Government contends that Ms. Ferrara established the requisite minimum personal contact with the District of Columbia when she sent a letter to a District-based Justice Department official stating her refusal to withdraw the disciplinary charges. That letter, however, was merely a reply to a Justice Department request that the charges be dropped. It is clear that this single, responsive mailing cannot constitute the "meaningful" contact, Burger King, 471 U.S. at 472, 105 S.Ct. at 2182, or "substantial connection" between the defendant and the forum state, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), that is required for jurisdiction. Even if this communication were sufficient to satisfy due process, it would nonetheless fail to meet the requirements of the D.C. long-arm statute. The scope of its otherwise broad "transacting any business" clause is limited by the rule that contact with a federal instrumentality located in the District will not give rise to personal jurisdiction. Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 813 (D.C.App.1976) (en banc). As the Court of Appeals for the District of Columbia has noted,
 
 
 37
 [t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.
 
 
 38
 Id.
 
 
 39
 B. Ms. Ferrara as Proxy for the State of New Mexico
 
 
 40
 As an alternative to its contention that there were sufficient contacts between Ms. Ferrara and the District of Columbia to establish jurisdiction, the Government argues that due process considerations are inappropriate in this instance. This claim rests on two assertions: First, it is not necessary to show the existence of minimum contacts in order to obtain jurisdiction over the State of New Mexico because the Supreme Court held, in South Carolina v. Katzenbach, 383 U.S. 301, 323-24, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966), that a State is not a "person" under the Due Process Clause and thus is not entitled to its protection. Second, because Ms. Ferrara is being sued in her official capacity, she should be treated as if she were the State for purposes of due process considerations. Given these premises, the Government maintains that the existence of minimum contacts is not relevant to the question of jurisdiction in this case.
 
 
 41
 We need not determine whether a State official sued in his official capacity should be treated as if he were the State for jurisdictional purposes because the United States could not have established jurisdiction over the State of New Mexico in the District of Columbia regardless of whether due process considerations are relevant to the inquiry. The District's long-arm statute provides for jurisdiction over a non-resident "person" who transacts business there. D.C.Code Ann. Sec. 13-423(a)(1). Therefore, in order to establish jurisdiction over New Mexico under the Government's alternative theory, the State must qualify as a person within the meaning of the statute despite the Government's contention that it is not a person under the Due Process Clause.
 
 
 42
 The Supreme Court has counseled that, "in common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it." Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (finding that State not a "person" for purposes of 42 U.S.C. Sec. 1983 because application to States not "clearly indicated") (internal brackets omitted). The D.C. long-arm statute defines "person" to includean individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia.
 
 
 43
 D.C.Code Ann. Sec. 13-421 (1981). Although a State could plausibly fall within the term "legal or commercial entity," such a reading would be awkward and, at best, is not "clearly indicated." Furthermore, because a State could not under any circumstances be domiciled in the District or organized under its laws, the statute's text affirmatively implies that a State is not a "person" for its purpose.
 
 
 44
 The Government itself does not appear to have any great confidence in its alternative basis for claiming jurisdiction. It chose to name Ms. Ferrara rather than the State of New Mexico as the defendant, its briefs fail to address the problem of the D.C. long-arm statute's application to States, and it conceded at oral argument that it must establish personal jurisdiction over Ms. Ferrara in order to maintain its suit. We also find it instructive that our research has failed to discover a single case in which the United States has named a State as the defendant in a suit brought by it in the District of Columbia. The United States, of course, has agents in all fifty States; and we doubt that its inability to sue a State in this forum will work any real hardship on the Federal Government or hinder its ability to administer justice.
 
 III. CONCLUSION
 
 45
 The United States cannot establish jurisdiction over Ms. Ferrara in the District of Columbia because she lacks sufficient contacts with the forum to satisfy the demands of due process. Treating this case as one against the State of New Mexico would not solve the jurisdictional problem because the State is not subject to the District's long-arm statute. Consequently, the order of the district court dismissing the Government's suit is
 
 
 46
 Affirmed.
 
 SILBERMAN, Circuit Judge, concurring:
 
 47
 It certainly seems anomalous to conclude that in a lawsuit of this nature--brought against a state official at the seat of government by the United States in vindication of its constitutional prerogatives--the district court is incapable of exercising "personal" jurisdiction over the defendant. Perhaps hoping to capitalize on this perception, the government, in its presentations to us, has attempted to frame its dispute as effectively one with New Mexico itself, or at least its Supreme Court. But as the majority properly points out, the only named defendant in the complaint is Ferrara. And although she is named in her official capacity as the New Mexico Supreme Court's chief disciplinary counsel, the government must nevertheless establish the district court's jurisdiction over her person. Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 29 (1st Cir.1988); see also Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424-25 (D.C.Cir.1991). For this reason, I concur in the court's determination that the district court lacks personal jurisdiction over the defendant--even though she is being sued not as a person, but as an instrumentality of state government, and even though it is the United States that has brought the suit.
 
 
 48
 This outcome might well be attributed to the inadequacy of the personal jurisdiction doctrine to account for the circumstances of this case. That doctrine, at least as it has developed to this point, does not allow for consideration of the one aspect of this case which might be thought particularly significant--that this case presents a legal dispute between governments within the federal system. The very notion of personal jurisdiction strikes me as inapplicable to this sort of case, especially in light of the Supreme Court's determination that a state is not a "person" within the meaning of the Due Process Clause, South Carolina v. Katzenbach, 383 U.S. 301, 323-24, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966), a proposition that compels the conclusion that there is no constitutional requirement of personal jurisdiction over a state defendant. Cf. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) ("The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause.... It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."). Still, I think we have no choice but to follow the doctrine as laid down, even though it has been formulated with an eye to disputes between private parties. It admits of no grounds for distinguishing this suit on the basis urged by the United States, i.e., the governmental nature of the parties and their relationship as sovereign participants in the federal system.
 
 
 49
 We have been provided, in this regard, with no principled grounds for distinguishing this case from a suit by Doe himself, or by any private party seeking to enjoin a state official from revoking any sort of state authorization (such as a driver's license) based on events within the forum state and having consequences there. The government does not contend that personal jurisdiction could be asserted under those hypothetical facts. Instead, it emphasizes that, in this case, it is the United States that has brought suit. But the government does not explain why this makes a difference. The government does not claim, for instance, that the United States is free to sue any state in any federal district. Nor does it offer any legal grounds for approaching the question of personal jurisdiction differently when suit is brought by the United States in the District of Columbia district court. The government, in other words, urges us to adopt a holding limited to the specific facts of this case--"a restricted railroad ticket, good for this day and train only." Smith v. Allwright, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987 (1944) (Roberts, J., dissenting). But it is not doctrinally sound to look to the plaintiff in determining whether jurisdiction is appropriate against the defendant. The intuitive reasonableness of allowing the federal government to sue a state in the District of Columbia--which, of course, the United States can do when it brings suit within the original jurisdiction of the Supreme Court--is not by itself enough, and I am unable to envision a rule of decision based on considerations acknowledged in the precedents that control.
 
 
 50
 * * * * * *
 
 
 51
 There is one point, however, on which I do not agree with the majority. I do not read the D.C. long-arm statute to bar service of summons upon a state. Section 13-421 of the D.C.Code provides for asserting personal jurisdiction over "any ... commercial or legal entity." This language, I think, can only be read to include states within its ambit. Granted, the definition does not actually include the word "state," but a state is certainly a "legal entity." I think the court overreads Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989), in which the Court determined that the word "person" as used in 42 U.S.C. Sec. 1983 did not include a state. The rule of interpretation therein adopted principally reflected the Will Court's concern about readily attributing to Congress an intention to impose monetary liability on the states. Here, by contrast, we have a purely procedural statute. Any constitutional concerns, if present at all, are certainly far less weighty. More important, I think it is incorrect to read Will to require courts to engage in linguistic contortions to avoid finding statutory coverage of states. And it is only through such contortions that one can construe the phrase "any ... legal entity" not to include a state.
 
 
 52
 My disagreement with the majority over the interpretation of D.C.Code Sec. 13-421 is inconsequential, however, since as I have already indicated I believe that the law requires that personal jurisdiction be established against Ferrara as the named defendant. And I agree with the majority that Ferrara's contacts with the District of Columbia have not been sufficient to justify the exertion of extraterritorial jurisdiction over her person.