Geoffrey & Mary Lou MANIFOLD,
Plaintiffs,

v.

WOLF COACH, INC., et
al., Defendants.

Civ. No. 01–1114(RJL).

United States District Court,
District of Columbia.

Sept. 30, 2002.

William Parker Lightfoot, Jr., Koonz, McKenney, Johnson, Depaolis & Lightfoot, Washington, DC, for Plaintiffs.

Jeffrey R. Schmieler, Brian Evan Hoffman, Law Offices of Saunders & Schmieler, Silver Spring, MD, Michael Philip Freije, Bruce Douglas White, Brault, Palmer, Grove, Zimmerman, White & Mims, Fairfax, VA, Baruch A. Fellner, Gibson, Dunn & Crutcher, L.L.P., Washington, DC, for Defendants.

### Memorandum Opinion

LEON, District Judge.

Before the Court is a motion by defendant Wolf Coach, Inc. ("Wolf Coach") to dismiss a personal injury suit by a cameraman, who was employed in Washington, D.C., and was electrocuted when the mast of a news van manufactured, in part, by Wolf Coach, struck a power line in northern Virginia. Wolf Coach, a Massachusetts corporation, argues that this Court does not have personal jurisdiction over the defendant and, alternatively, that the case should be transferred to a more convenient forum. For the following reasons, the Court denies the defendant's motion to dismiss.

### I. Background

Plaintiff Geoffrey Manifold, a resident of Maryland, was a cameraman for Fox Television Stations, Inc. ("Fox"), a District of Columbia ("District") corporation. On May 2, 2000, he reported to work at his place of employment in the District, where he picked up his camera gear, retrieved his assignment, and headed off in a news van. The news van, or electronic news gathering ("ENG") vehicle, contained mobile broadcast equipment to facilitate gathering and reporting news. The mobile broadcast equipment included a mast/antenna ("mast") that can extend sixty-two feet above grade. Defendant Will–Burt designed and manufactured the mast, and defendant Wolf Coach retrofitted the van to include the mast and the other ENG equipment.

Plaintiff Manifold's assignment took him to Alexandria, Virginia, where he was told to conduct a live broadcast of a "remote live feed" at the Alexandria Police Department. The van, parked in front of the police department, had extended the mast. While plaintiff Manifold was holding the camera, the mast made contact with power lines located forty-nine feet above grade, causing an explosion that sent an electrical current down the mast and through transmission lines attached to the plaintiff's camera. The camera, areas around the truck, and areas along the transmission

line all exploded. The plaintiff suffered severe electrical shock, and needed a helicopter to transport him to Washington Hospital Center's Shock Trauma Unit.

Having suffered serious electrical injuries, including second-degree burns, plaintiff and his wife filed six tort counts against Wolf Coach, the company that retrofitted the van, and Will–Burt Company, Inc. ("Will–Burt"), the company that manufactured the mast. Specifically, the plaintiffs' claims include negligence, a failure to warn, strict liability, a breach of implied warranty, loss of consortium, and punitive damages. The plaintiff also originally sued Fox and the company that built the pan-tilt head for the van's dish, but voluntarily dismissed both parties. Will–Burt has also filed a cross-claim against the other defendants.

Subsequently, Wolf Coach filed this motion, seeking dismissal based on jurisdictional and venue grounds. Wolf Coach contends that this Court does not have personal jurisdiction over the plaintiff under the various provisions of the District's long-arm statute. If not dismissed, Wolf Coach argues that the case should be transferred to another jurisdiction because of *forum non conveniens.*

## II. Discussion

The Court cannot grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276

(D.C.Cir.1994). Thus in evaluating the defendant's motion, the Court will assume all the factual allegations set forth in the complaint. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir. 1985), and will construe the complaint liberally in favor of the plaintiff. *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir. 1979). Still, this Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

### A. Personal Jurisdiction

#### 1. Minimum Contacts Doctrine

■ The question of personal jurisdiction in this matter is governed both by the District's long-arm statute and the constitutional requirements of the Due Process Clause. *GTE New Media Services Incorporated v. BellSouth Corporation,* 199 F.3d 1343, 1347 (D.C.Cir.2000). The D.C. statute provides that the plaintiffs must demonstrate that the defendant transacted business in the District and that the plaintiffs' claim arose from such business. D.C.Code Ann. § 13–423 (1981).[1] The plaintiff must allege nonconclusory facts that establish a prima facie showing of personal jurisdiction. *See First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1378 (D.C.Cir.1988). Since the constitutional requirements have been found to be coextensive with the Due Process requirements, the discussion of the statute and the due process requirements collapses into one. *United States v. Ferrara,* 54 F.3d 825, 828 (D.C.Cir.1995).

---

**1.** Specifically, the statute provides, in part, that

 (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

 (1) transacting any business in the District of Columbia....

D.C.Code Ann. § 13–423 (1981).

■ The Court can support personal jurisdiction over a nonresident defendant when the defendant "purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The minimum contacts must be such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)), and that the defendant "should reasonably anticipate being haled into court." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In *World–Wide Volkswagen Corporation v. Woodson,* for example, the Supreme Court considered whether a district court in Oklahoma had personal jurisdiction over a New York automobile retailer, who never intended to serve the Oklahoma market. 444 U.S. at 288, 100 S.Ct. 559. In that case, plaintiffs purchased a new car from the defendant in New York, and then drove the car across country. While driving through Oklahoma, the plaintiffs were involved in an accident and filed a products-liability claim in Oklahoma against the defendant. The Supreme Court held that the circumstances did not support personal jurisdiction over the nonresident defendant, noting that the defendant did not "serve or seek to serve the Oklahoma's market." *Id.* at 295, 100 S.Ct. 559.

In *Burger King Corporation v. Rudzewicz,* however, the Supreme Court found a Florida district court had personal jurisdiction over a Michigan franchisee doing business with defendant Burger King Corporation in Florida. 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). There, the nonresident defendant had a "substantial" franchise contract with the plaintiff, which involved a "carefully structured 20–year relationship" and "wide-reaching" contacts. *Id.* at 479–80, 105 S.Ct. 2174. Because the defendant had voluntarily accepted a "long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " *Id.* at 480, 105 S.Ct. 2174 (citations omitted).

■ Further, a court cannot maintain personal jurisdiction over a nonresident defendant if the defendant merely placed a product into the stream of commerce with the knowledge that it would carry the product to the forum state. *Asahi Metal Industry,* 480 U.S. at 112, 107 S.Ct. 1026. In *Asahi Metal Industry Co. v. Superior Court of California,* a plaintiff, who was involved in a motorcycle accident, sued a foreign defendant that manufactured tire valve assemblies in Japan. The defendant had sold the tire valves assemblies to a tire tube manufacturer, another foreign company, who then sold the tire tubes in the United States. *Id.* at 105, 107 S.Ct. 1026. In finding that the exercise of personal jurisdiction would be unreasonable, the Court explained that the " 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state." Id.* at 112, 107 S.Ct. 1026 (citations omitted) (emphasis in original). However, the Court also stated that "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum state, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product

through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

### 2. Application

 The plaintiffs contend that the defendant purposefully transacted business within this jurisdiction. The Court agrees. It is true that aside from an informational website,[2] there is no evidence that defendant marketed its product to businesses in the District or had a long-standing relationship with any business in the District. The defendant did, however, have a single contract with a District-based corporation, for which it custom retrofitted and delivered the ENG van. Pls.' Supplemental Opp'n to Def. Wolf Coach's Mot. to Dismiss for Lack of Personal Jurisdiction ("Pls.' Supplemental Opp'n") at 3–4. The Supreme Court has indicated, in dicta, that a single act can support jurisdiction as long as the defendant "creates a 'substantial connection' with the forum." *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. 2174 (citing *McGee v. International Life Insurance, Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)); *see also Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F.Supp. 558, 564 (D.D.C.1981) (stating that "[a] single act in the jurisdiction by defendant, under some circumstances, may be sufficient to constitute 'transacting business', and thereby confer jurisdiction"). Thus with no "mechanical test" to apply, *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174 (quoting *International Shoe*, 326 U.S. at 319, 66 S.Ct. 154), this Court must consider the "quality and na-

ture" of defendant Manifold's contacts with this jurisdiction, *Burger King*, 471 U.S. at 480, 105 S.Ct. 2174, and whether exercising personal jurisdiction offends the "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154.

As to the nature of the defendant's conduct, the Court finds that it was "qualitatively significant." *United States v. Ferrara*, 54 F.3d 825, 830 (D.C.Cir.1995). Not only did the defendant's business transaction with the District involve negotiations between Fox representatives in the District and defendant's representatives in Massachusetts, *see* Pls.' Supplemental Opp'n at 3–5 (describing negotiations, which include faxes and phone calls from Massachusetts to the District and a meeting in the District between the defendant's national sales representative and Fox), but the end result of the contract was an ENG van to be used specifically for news gathering not only in the District but in the metropolitan area that Fox news covers. Moreover, the projected cost of the sales transaction itself was quite significant (i.e., $200,417).

Equally important, finding personal jurisdiction in this case does not offend the "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154, because the defendant sought to serve the metropolitan D.C. area by negotiating a contract with a District-based news organization with the prominence of Fox News. *World–*

---

**2.** The plaintiffs contend that the website itself is sufficient to support personal jurisdiction. However, the D.C. Court of Appeals has specifically held that personal jurisdiction "surely cannot be based solely on the ability of the District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." *GTE New Media Ser-*

*vices Incorporated v. BellSouth Corporation*, 199 F.3d 1343, 1350 (D.C.Cir.2000). While "mere accessibility" of the websites alone does not establish the necessary minimum contacts, *id.*, the D.C. Circuit did not preclude considering such websites as one factor among many. *See also Vitullo v. Velocity Powerboats*, 1998 WL 246152 (N.D.Ill.1998).

*Wide Volkswagen Corporation*, 444 U.S. at 295, 100 S.Ct. 559. Having negotiated directly with the Fox station in D.C., the defendant surely had every reason to believe that the van was going to be used by Fox to cover news in the D.C. metropolitan area. *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 332 (D.C.2000) (noting that "[t]he Metropolitan Washington, D.C. area functions, in many respects, as a unified legal and commercial community"). Unlike the new car purchased in New York and driven to Oklahoma in *World–Wide Volkswagen*, the use of the van in areas immediately surrounding the District (e.g., Alexandria, Virginia) was expected and utterly predictable. Indeed, the defendant had been previously sued in a similar situation in which a mast on an ENG made contact with a power line in Virginia, *see Hall v. CNN America Inc.*, 1996 WL 653839, and was thus well aware at the time it retrofitted the 1998 van that Fox covered news in surrounding areas with their vans. Unlike *Asahi*, where the defendant's product was merely placed into the stream of commerce, the defendant here directed its product to the DC area. The van's path to this jurisdiction, far from floating aimlessly in the stream of commerce, was direct and foreseeable. The defendant personally delivered the van to the District, *see* Pls.' Supp. Opp'n at 5–6, and had every reason to believe it would be operated in the D.C., southern Maryland, and northern Virginia areas.

Finally, even if there are minimum contacts, the defendant maintains, this Court does not have personal jurisdiction because the plaintiffs' claims do not "arise from" the defendant's business transactions with the jurisdiction (i.e., the "delivery of the van"). D.C.Code 13–423(b); *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174; Def. Wolf Coach Inc.'s Response to Pl. Supplemental Opp'n to Def. Wolf Coach's Mot. to Dismiss at ¶¶ 3–4. The nexus here, however, is sufficient because there is a "discernible relationship" between the business transacted in the District and the claims. *See Shoppers Food Warehouse*, 746 A.2d at 333. The business transaction is not simply the delivery of the van, as the defendant contends, but is the transaction of selling the van to a business in the District. That van, or transaction, is itself related to the personal injury claims brought by the plaintiff.

## B. Forum Non Conveniens

 Even if this minimum contacts supports personal jurisdiction, the defendant argues that the case should be transferred to a different venue under the *forum non conveniens* doctrine. To transfer the case, the defendant bears the burden of showing that there is an adequate alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677 (1996). The defendant in this case has never specifically averred which alternative forum is available, though it implies, by stating that the accident occurred in Virginia, that the Eastern District of Virginia is a more appropriate forum. Because the defendant did not transact business in any other forum except Massachusetts, it is unlikely that a district court in Virginia would be able to support personal jurisdiction over the defendant. For this reason, the defendant has not demonstrated that an adequate alternative forum exists, and this Court denies the motion to transfer the case.

## Conclusion

For the foregoing reasons, it is hereby ordered that the defendant's motion to dismiss and the defendant's motion to transfer the case are denied [# 25–1, 25–2].