**Seymour AUERBACH, Appellant,**

v.

**SVERDRUP CORPORATION, et al.**

**No. 86–5235.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1987.

Decided Sept. 22, 1987.

As Amended Oct. 23, 1987.

---

Charles A. Hobbs, Washington, D.C., for appellant.

Mark A. Saunders, with whom James P. Dollard Jr., Robert J. Siverd, and Stanley M. Ackert III, New York City, were on the brief, for appellee Terminal Realty Penn Co.

James H. Pipkin Jr. and Loren Kieve, Washington, D.C., (for Terminal Realty Baltimore Co.), Lawrence E. Carr Jr. and Margaret H. Warner, Washington, D.C., (for Sverdrup Corp., et al.), Mose Lewis III, Washington, D.C., (for Legion Design Systems, Inc.), Carol T. Stone and John O. Easton, Washington, D.C., (for Jackson & Tull, Chartered Engineers), Phyllis D. Thompson and John Vanderstar, Washington, D.C., (for Union Station Redevelopment Corp.), and James W. Dyke Jr., Washington, D.C., (for Devrouax & Purnell, Architect Planners, P.C.) were on the joint brief for appellees Terminal Realty Baltimore Co., et al.

Charles L. Reischel, Deputy Asst. Corp. Counsel, Washington, D.C., for the District of Columbia, entered an appearance for appellee the District of Columbia.

Before MIKVA, BUCKLEY and WILLIAMS, Circuit Judges.

BUCKLEY, Circuit Judge:

An architect who rendered his services in designing a parking garage for the National Visitors Center in Washington, D.C. seeks compensation for the alleged copyright infringement of his plans for the

Union Station Parking Garage. The district court dismissed the complaint for want of jurisdiction because the court found that the United States "authorized or consented" to the alleged infringement by appellees, and therefore, pursuant to a statutory waiver of immunity, 28 U.S.C. § 1498(b), appellant's claim must be brought against the United States in the Claims Court. On a related theory, the district court dismissed the action for failure to join the United States as an indispensable party. Fed.R.Civ.P. 19.

We reverse and find as a matter of law that the government waiver of immunity by authorization and consent requires explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement. Because the district court applied an erroneous standard of consent, we remand with instructions to determine whether the government in fact waived immunity under the tighter standard here set out. If it is found that the government did not consent to liability, then the United States ceases to be an indispensable party. In that case appellant should be allowed to proceed on the merits against appellees in his infringement action.

## I. BACKGROUND

In 1968, Congress passed the National Visitor Center Facilities Act of 1968, 40 U.S.C. §§ 801–809 (1982), an ill-fated attempt to renovate the Union Station Building and construct an adjacent parking garage ("garage"). Pursuant to the Act, Congress leased the station for twenty-five years from its owners, appellees Terminal Realty Penn Co. ("Penn RR") and Terminal Realty Baltimore Co. ("Baltimore RR") (or jointly "the railroads"). In 1970, appellant was assigned the architectural service contract to renovate the station and construct the garage, as well as other projects. Only the architectural plan for the garage is at issue in this case.

The original construction budget for the garage was about $11 million. Auerbach negotiated a fee of $430,000 for the 4,000-car project plus a contingent fee in the event of cost overruns. Brief for Appellant at 8 n. 4. Auerbach thereupon hired appellee Sverdrup & Parcel, an engineering and architectural firm, to provide the engineering services needed to prepare the plans and specifications.

Auerbach initially drew a schematic plan for the 4,000-car garage. With the funds evidently lacking for a project of this size, the railroads requested Auerbach to scale back his design. He did so and produced a detailed construction phase plan. After submitting the project for bids, it became apparent that it was still too large. Auerbach thereupon modified the plan by marking as deleted an entire floor, the north twenty-five percent of the building, and related components and features. The plan for these deleted sections forms the subject of the infringement claim. New funds ultimately became available and, according to appellant, the deleted portions of his plan were copied and used. He thus claims he is entitled to a contingent payment under the contract, and that absent such payment, some or all of the appellees are liable for unlawfully violating his copyright.

By 1976, according to appellant, $30 million had been spent on the garage, which was still only partially complete, causing the United States to stop construction for lack of funds and mothball the project. In April 1977, Auerbach signed a settlement and release with the United States Department of the Interior and other parties. The release is cited by appellees as one piece of evidence that the government authorized, and therefore assumed liability for, the alleged infringement.

In 1981 Congress geared up again, authorizing the federal Department of Transportation ("U.S. DOT") to complete the renovation of the station and garage with federal highway funds distributed to the District of Columbia. Union Station Redevelopment Act, 40 U.S.C. §§ 811–819. All right, title, and interest in the facility was expressly reserved to the United States. Under a contract with U.S. DOT, the District of Columbia Department of Transportation ("D.C. DOT") was to supervise the project. To carry out this responsibility,

U.S. DOT turned over to D.C. DOT all of Auerbach's preexisting architectural plans and drawings in the possession of the United States Department of the Interior. *See* Brief for Penn RR at 6; Rec.Ex. H. para. 2. U.S. DOT also required D.C. DOT to submit new architectural plans for its review, approval, or modification. D.C. DOT in turn hired Sverdrup & Parcel ("Sverdrup"), Auerbach's former engineering consultants, to provide the architectural and engineering services needed to complete the garage, while Sverdrup in turn hired three subcontractors.

Penn RR emphasizes that the Redevelopment Act and the ensuing contracts demonstrate the United States' close supervision and approval of the garage project. Brief for Penn RR at 7–9. Appellant, by contrast, cites the original 1968 contract between the U.S. and the railroads (each party assumes liability for its own acts), the 1982 U.S.-D.C. contract (D.C. DOT liability for design and construction), and the D.C.-Sverdrup contract (Sverdrup indemnity for D.C. DOT copyright infringement liability). Brief for Appellant at 13–14. Continuing this factual battle, Auerbach seeks to document his ownership of the plans, Brief for Appellant at 14–16, and the railroads introduce various written agreements as evidence that the United States released the railroads from liability, Brief for Penn RR at 9–12.

The final two items of relevance are the 1981 Senate hearings held on resuming construction at Union Station and an affidavit of Garry Burch, D.C. DOT Project Manager, in which he says a National Park Service employee delivered to him copies of Auerbach's plan. Appellees claim the delivery from a United States employee to the D.C. DOT is evidence that the United States intended the drawings to be copied. Brief for Penn RR at 33 n. 15. Appellees seek to construe the Senate record to show congressional authorization for the use and therefore the copying of the plans. *Id.* at 11–13. Appellant rebuts the inference, claiming the language evidences no awareness the United States was consenting to liability for an unauthorized infringement. Brief for Appellant at 16–20.

The district court, in a brief ruling, granted appellees' motion to dismiss or grant summary judgment, citing a patent infringement case, *Hughes Aircraft v. United States*, 209 Ct.Cl. 446, 534 F.2d 889 (1976), for the proposition that the government can implicitly consent or authorize an infringement. Primarily, the court felt it dispositive that the United States was the real party at interest. Record Excerpts for Appellant at 3. The court also concluded that the United States was an indispensable party because it "may be prejudiced by its absence from this litigation," *id.;* Fed.R.Civ.P. 19.

## II. DISCUSSION

The district court's assessments of the facts in this case are subject to a clearly erroneous standard of review. Because it appears that the district court misapplied the law, however, this appeal presents a mixed question of law and fact. The legal component raises only one issue: by what standard must a party demonstrate that the United States gave its authorization or consent to a copyright infringement? The factual component requires the district court, in the first instance, to assess whether appellees introduced sufficient evidence to satisfy the legal standard.

The case turns on the construction of 28 U.S.C. § 1498(b), a rarely construed waiver of immunity by the federal government for copyright infringement in certain circumstances. It states in pertinent part:

> Hereafter, whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive remedy of the owner of such copyright shall be by action against the United States in the Claims Court....

28 U.S.C. § 1498(b) (1982).

As made clear in the legislative history, the section was passed to correct a simple

inequity. The United States, already liable for patent infringement and a host of other torts, was anomalously free from liability for copyright infringement. S.Rep. No. 1877, 86th Cong., 2d Sess. 3–4, *reprinted in* 1960 U.S.Code Cong. & Admin.News 3444, 3446 ("Legislative History") (quoting H.Rep. No. 624, 86th Cong., 2d Sess., which accompanied the bill in the House). The essence of the remedy was a direct suit against the United States in the Claims Court.

■ As we read the statute, it effects a policy that *government* wrongdoing in the realm of copyright infringement not go uncompensated. The first two clauses make this point explicitly. The final clause extends the waiver to third parties acting for the government *and* with the government's "authorization or consent." Read in light of the first two clauses, the final clause indicates that private parties had best be certain that the government intends to shoulder liability for their wrongful acts. Absent authorization or consent, says the statute in plain terms, they proceed at their peril. *See* Legislative History at 3444–45 ("The language of the bill is to the effect that the exclusive remedy of the owner of the copyright against the United States shall be *only* in those cases in which the infringement was made with the authorization or consent of the Government. It would, therefore, follow that all other infringements would *not* transfer liability to the U.S. Government." (emphasis added)). This construction of the statute is confirmed by the general rule that governmental waivers of liability must be construed narrowly. *See, e.g., Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) ("this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." (quoting *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957))); *see also Windsurfing Int'l, Inc. v. Ostermann,* 534 F.Supp. 581, 588 (S.D.N.Y. 1982) ("[I]f the government requirements

can be satisfied without an infringement, authorization or consent [for patent infringement] will not be implied."); *Decca Ltd. v. United States,* 640 F.2d 1156, 1170, 225 Ct.Cl. 326 (1980) ("A waiver of sovereign immunity must be strictly construed."), *cert. denied,* 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981); *cf. United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) ("elementary" that U.S. must consent to suit, the terms of consent define the court's jurisdiction, and the waiver must be "unequivocally expressed." (internal citations omitted)).

Manifestly, the government in this statute is not obligated to act as an insurer for the infringement actions of any third party acting for the government, as suggested by appellee Penn RR:

> In sum, Appellee TRP [Penn RR] submits that the correct test for the application of 28 U.S.C. § 1498(b) is not whether the United States actually knew or intended to commit an infringement, but whether and to what extent the United States authorized or consented to the *actions which encompassed* an alleged copyright infringement by its contractors and subcontractors.

Brief for Penn RR. at 27 (emphasis added).

■ To interpret the statute in this manner is to convert a governmental waiver of sovereign immunity into a government insurance plan for the torts of its agents. We reject this reading. When the government authorizes an "action" by a third party, it is not therefore liable for any copyright infringement the third party may choose to undertake within the sphere of the authorized activity. Rather, the statute stands for the more limited proposition waiving immunity for third-party *infringements* that are authorized or consented to by the government.

A narrowly tailored construction of the waiver is supported by the caselaw interpreting the sister provision, section 1498(a), waiving immunity for patent infringements

by the government.[1]  *Cf. Decca Ltd.*, 640 F.2d at 1167 ("section 1498[(a)] is a waiver of sovereign immunity only with respect to a direct governmental infringement of a patent"; hence, government not liable for "inducing infringement by others, [or] for its conduct contributing to infringement of others....") (footnote omitted); *Leesona Corp. v. United States*, 599 F.2d 958, 220 Ct.Cl. 234 (rejecting construction of section 1498(a) that "converted it to a consent to suit on a tort theory, and [treated] the United States as a tort-feasor"), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).  As is to be expected, the emphasis is on explicit consent, *see, e.g., Carrier Corp. v. United States*, 534 F.2d 244, 247, 208 Ct.Cl. 678 (1976), though obviously the form of the consent can vary, *see, e.g., Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901, 209 Ct.Cl. 446 (1976) ("e.g., by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement," by retroactive consent).

Patent infringement suits recognize a limited class of cases in which consent is implied by necessity.  As explained in *Bereslavsky v. Esso Standard Oil Co.*, 175 F.2d 148, 149 (4th Cir.1949), if the government orders a contractor to manufacture a high octane gasoline that necessitates the use of a patented process, evidently expecting that manufacture would require its use, it has effectively accepted liability.  Conceptually, this holding simply reflects a variation in the form of acceptable proof on the unvarying theme that the party must demonstrate government authorization.  Necessity in cases like *Esso* may be every bit as probative as a written contractual clause.  By contrast, no permutation of necessity operates in the present case. Aside from a desire to save money, nothing

necessitated appellees' apparent decision to copy the deleted parking drawings.

■  With the legal landscape thus clarified, the case reduces to a very simple question: do appellees establish that the government authorized or consented to the copyright infringement of Auerbach's plans, if such infringement in fact occurred?  The evidence must demonstrate the government's authorization or consent. Obviously express documentary evidence will do, which typically will consist of a contractual clause setting forth the government's assumption of liability.  *See, e.g., Hughes Aircraft*, 534 F.2d at 900, n. 15 (example of standard waiver for patents); 48 C.F.R. §§ 1227.401–71(b)(6)(ii), 1252.227–71(a)(c)(2) (1986) (contractors to U.S. DOT generally required to obtain prior written permission to incorporate copyrighted material).  Evidence probative of implied consent or authorization can also be submitted to the trier of fact for evaluation of its sufficiency.  It is, however, immaterial whether Auerbach actually authorized the use of his plans, a matter disputed by the parties in the briefs.  Brief for Baltimore RR at 17–21; Brief for Penn RR at 11, 30, 33; Reply Brief for Appellant at 12, 14 n. 16.  This would be a defense to be asserted by appellees on the merits, but it does not bear on governmental intent on the narrow issue of authorization and consent.  Furthermore, while the measure of damages for violation of copyright could turn on the use to which the copy was put, the tort itself would be complete when the copy was made.  The fact that the federal government might benefit from the copying because it subsequently will have ownership of the building does not make the United States a party to the copyright violation.

---

1.  Section 1498(a) states in relevant part:

   (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture.

For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (1982).

In reviewing the record developed below, we do not find an express contractual provision wherein the government authorized the use of Auerbach's canceled plan. We do not find evidence that the government stated that it knew of the plan's existence and wanted it copied. For instance, it would appear that the National Park Service employee, Mr. Biderman, turned over copies of the Auerbach plan to safeguard it from water leaking through the Union Station roof, not to authorize or consent to an infringement on behalf of the United States. *See* Supplemental Brief for Appellant, Addendum at 3 (attaching U.S. DOT administrative decision denying liability in the instant case); Brief for Appellant at 32 n. 19 (noting that Biderman affidavit is not in the present record and therefore can only be evaluated on remand). We do not find evidence of necessity, i.e., a requirement that the plans be used, which would in turn require that they be copied. *See* Brief for Penn RR, Ex. E, F, G (U.S. contracts with the various parties—nowhere restricting D.C. DOT's apparent freedom to examine the entire project, study the optimum use of space to be developed, and promulgate whatever plans seemed appropriate). Indeed, the only contractual references to the Auerbach plan we find is a requirement that the contractors check the existing structures against it and other drawings to determine the degree to which the structure conformed to plan. Record Ex. F, art. III, sec. 1; Ex. G, art. III, sec. 1. Finally, we do not find evidence that appellees called specific attention to the deleted material or sought a specific waiver for its use. At best, appellees have put forward evidence showing that the government knew of the existence of the Auerbach plans. Brief for Penn RR at 33–34. For instance, testimony in the Senate hearings is said to "repeatedly note[ ] that the original plans and drawings were available and could be used to complete construction; ...." *Id.* at 33. Yet a knowledge of the plan's existence does not, without more, translate into authorization to infringe on Auerbach's copyright, if such a right indeed exists.

In short, we find no evidence in the record, and certainly no uncontroverted evidence sufficient to support a grant of summary judgment, that the United States authorized or consented to the copying of appellant's plan. Nonetheless, we are constrained to order a remand. Numerous contracts were signed during the drawn out period of the garage's non-completion; Congress undertook to investigate the reasons for the delay; testimonial evidence has been compiled. Additional materials may be introduced. This mass of evidence must be sifted and evaluated in the first instance by the district court pursuant to the reading of the statute provided herein.

We expressly do not reach the other issues argued by the parties because the case before us concerns a dismissal for want of jurisdiction. The railroads contend, for example, that Auerbach's 1977 release bars any claim against them. The parties also argue the effect of various aspects of copyright law, such as the distinction between copying, which constitutes an infringement, versus use of a copyrighted item, which does not constitute an infringement. Our holding is limited to the construction of 28 U.S.C. § 1498(b).

## III. CONCLUSION

The trial court erred in moving too quickly to the conclusion that government sponsorship of the Union Station renovation demonstrates authorization or consent by the government to a specific act of infringement. As a corollary, if the court ultimately concludes that appellant's suit constitutes an infringement action against private parties, the United States would not be, on these facts, an indispensable party, though the government remains free to seek permission to intervene. Accordingly, the order of the district court dismissing appellant's suit for want of jurisdiction is

*Reversed and remanded.*