**Frank FREIMAN, et al., Plaintiffs,**

v.

**Edward Glenn LAZUR,
et al., Defendants.**

**Civil Action No. 95–0786–LFO.**

United States District Court,
District of Columbia.

April 29, 1996.

Eric H. Holder, Jr., United States Attorney, Fred E. Haynes, Assistant United States Attorney, for Edward Glenn Lazur and U.S.

Stephen V. Wehner, Wehner & York, Washington, D.C., for Plaintiffs.

Richard J. Magid, Michael D. Oliver, Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland, Charles W. Saber, Dickstein, Shapiro & Morin, L.L.P., Washington, D.C., for Richard Seel and Richard F. Seel, Inc. t/a Prime Time.

James E. McCollum, Jr., College Park, MD, Robert C. Dunn, Cohen, Dunn & Sinclair, P.C., Alexandria, Virginia, for Kay Hudson Wohl.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

This case concerns allegations that government contractors with and government employees of the U.S. Department of Energy, through its Office of Construction and Capital Projects, infringed plaintiffs' copyrights, conspired to infringe their copyrights, and other related pendent claims. Plaintiffs Frank Freiman and Freiman Parametric Systems, Inc. created and own the copyrights to twenty-one computer programs known by the name of "FAST", which plaintiffs developed under contract with the Department. Plaintiffs also created a combination of the FAST computer programs known by the name of "FAMAS" pursuant to a subcontract with the Department, the prime contractor being Kaiser Engineers. Defendant Edward G. Lazur is the Acting Director of the Office of Construction and Capital Projects and represented the Department with respect to both the FAST and FAMAS contracts. Defendants Richard F. Seel, individually, and Richard F. Seel, Inc. t/a Prime Time, along with defendants Kay Hudson Wohl, individually, and Kay Hudson Wohl d/b/a Wohl Associates, parties to a subcontract with Dames & Moore, one of the Department's prime contractors, developed for the Department and now purport to own a computer program named "INSITE". Defendants Seel and Prime Time are former agents of the plaintiffs; defendant Wohl formerly worked at the Department with defendant Lazur in representing the Department with respect to the FAST and FAMAS contracts. Plaintiffs allege that INSITE infringes their copyrights in FAST and FAMAS.

The United States has moved to be substituted for defendant Lazur and has filed a motion to dismiss for lack of subject matter jurisdiction. Defendants Seel, Prime Time,

Wohl, and Wohl Associates have moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue.

## II.

The Complaint alleges the following facts: In 1980 plaintiffs Frank Freiman and Freiman Parametric Systems entered into a contract with the Department to design computer programs that could predict and estimate the costs of Department projects such as nuclear systems. Plaintiffs named these programs "FAST". In 1983 the Department and Freiman agreed to a clause in the contract that recognized his proprietary interests in the FAST computer programs. Compl. ¶ 28. Throughout the 1980s, Department employees (and now defendants) Lazur and Wohl represented the Department in contracts that concerned the creation and production of the FAST computer programs. *Id.* at ¶ 27.

During this time that plaintiffs were parties to the contract with the Department to create and produce FAST, plaintiffs also sold the FAST computer program commercially. From 1981 to 1987, plaintiffs licensed defendants Seel and Prime Time as agents for sale of the FAST computer programs. *Id.* at ¶ 31. In 1987 plaintiffs gave an exclusive license for the FAST programs to Seel and Prime Time for a term of five years, automatically renewable for two more years. A clause in the licensing agreement acknowledged plaintiffs' proprietary interest in the FAST programs. *Id.* at ¶ 34.

In 1991, the Department, through its prime contractor Kaiser Engineers, awarded Freiman three contracts to combine all of the FAST computer programs into a program named "FAMAS". *Id.* at ¶ 29. Freiman subcontracted work on the FAMAS contracts to Seel and Prime Time; and Freiman "directed Defendants Seel and Prime Time as to the tasks that were to be performed as their subcontractors." *Id.* at ¶ 40. Plaintiffs allege that "[u]nbeknownst to the Plaintiffs, Defendants Seel and Prime Time, at the same time they were subcontractors to Freiman ... bid and received their own contract for the FAMAS project." *Id.* at ¶ 42; Ex. H.

Therefore, plaintiffs allege, defendants Seel and Prime Time were simultaneously parties to a contract with Kaiser Engineers and to a subcontract on plaintiffs' contract with Kaiser Engineers, both on the same Department project to develop FAMAS. *Id.* at ¶ 49.

In 1993 plaintiffs and defendants Seel and Prime Time completed their work on the three FAMAS contracts. In September 1993, plaintiffs requested that as their subcontractors, defendants Seel and Prime Time provide them with the "complete set of source codes of the FAMAS project." *Id.* Defendants refused to release them. *Id.* Consequently, Freiman "was unable to bid on Phase II of the FAMAS project" because he did not have a complete set of the source codes. *Id.* at ¶ 68.

On June 2, 1994, Seel and Prime Time, while still under contract with Freiman, registered a copyright for a computer program known as "INSITE" with the U.S. Copyright Office. *Id.* at ¶ 70, Ex. V (INSITE copyright application). Plaintiffs allege that the INSITE program is a "false and fraudulent registration for a copyright" because it is "actually computer language developed for use in the FAMAS program designed to use the FAST computer programs." *Id.* at ¶ 70. Plaintiffs "discontinued" their licensing agreement with defendants Seel and Prime Time on or about June 30, 1994. *Id.* at ¶ 147.

On August 30, 1994, defendants Seel and Prime Time, joined by defendants Kay Hudson Wohl and her company Wohl Associates, allegedly solicited a contract from an entity identified in the Complaint only as "SAIC" (which was also under contract with the Department) for the development of the INSITE computer program for the Department. *Id.* at ¶¶ 73, 77. Defendant Wohl retired from the Department earlier that month. On October 21, 1994, defendant Lazur sent a memo to the Department's Project Management Division and the Program Budget Branch in Richland, Washington for the transfer of $180,000, originally intended for payment to plaintiffs for FAMAS, to defendant Prime Time for the generation of a proposal for INSITE. *Id.* at ¶ 78, Ex. X (copy of the memorandum). "[I]n or around October of 1994," the Department awarded a

contract for INSITE to Seel, Prime Time, Wohl, and Wohl Associates, not through SAIC, but through another contractor, Dames & Moore. *Id.* at ¶ 79.

Plaintiffs also allege that in or around September 1994, defendants Seel and Prime Time began selling for their own account a computer program called "MAP", which is substantially similar to plaintiffs' FAST programs. *Id.* at ¶¶ 152, 89. Plaintiffs allege that defendant Wohl is a participant in the sale of the MAP program; she had the MAP manual translated from French into English. *Id.* at ¶ 90.

Accordingly, plaintiffs claim that the foregoing transactions by defendants infringed their copyrights in violation of 17 U.S.C. § 101 *et seq.;* constituted unfair competition, false designation of origin, false labeling, and false advertising in violation of 15 U.S.C. § 1125; and contributed to infringement of copyright. Plaintiffs also allege pendant state-law claims. Defendants have filed motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, or improper venue. The United States has moved to be substituted for defendant Edward Lazur and has filed a motion to dismiss for lack of subject matter jurisdiction.

### III.

Plaintiffs allege that defendant Edward Lazur, the Acting Director of the Office of Construction and Capital Projects in the Department, "caused and materially contributed to the infringement of the [plaintiffs'] copyright and proprietary data." Compl., Count I. Plaintiffs also allege that defendant Lazur entered into a civil conspiracy with the other defendants to violate the federal copyright laws, to violate ·state law in the misappropriation of trade secrets, and to intentionally interfere with plaintiffs' contracts and business. Compl., Count X. Defendant Lazur represented the Department in awarding Department contracts, first, to plaintiffs and then to defendants Seel, Prime Time, Wohl, and Wohl Associates.

### A.

■ Plaintiffs' common law tort claims are governed by the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563. This Act shields federal employees from individual liability for common law torts and requires the substitution of the United States for the individual defendant upon certification by the Attorney General or her designee that the federal employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). The United States has moved to be substituted for defendant Lazur on the common law tort claims. A certificate from Mark E. Nagle, Acting Chief, Civil Division, United States Attorney's Office, states that the United States finds "that the defendant Edward Glenn Lazur was acting within the scope of his authority as an employee of the United States at the time of such alleged incidents." U.S. Mot., Ex. A. This certification automatically substitutes the United States for the government employee named as defendant. 28 U.S.C. §§ 2679(b), (d)(1), (d)(4). Accordingly, the United States is substituted for defendant Lazur as a defendant in this action in Counts I and X to the extent that plaintiffs allege defendant Lazur is liable for common law torts.

### B.

■ In order to sue the United States under a theory of tort, plaintiffs first must file an administrative claim with the appropriate agency. 28 U.S.C. § 2675. This administrative action is a jurisdictional prerequisite that cannot be waived. *See Odin v. United States,* 656 F.2d 798, 801 (D.C.Cir. 1981). Plaintiffs have not filed the required administrative claim and, in fact, concede that "this count [Count X] must be dismissed against Defendant Lazur." *See* Pls.' Reply at 6; U.S. Mot., Ex. B (Ralph D. Goldenberg Decl.) (stating that plaintiffs have not filed an administrative claim). This Court lacks subject matter jurisdiction over the common law tort claims against substituted defendant United States in Counts I and X because of plaintiffs' failure to file administrative claims. Accordingly, an accompanying Order dismisses those counts.

### C.

In addition to common law tort claims, Count I charges defendant Lazur with copyright infringement. However, the same principle governs here that relieves government employees from common law tort liability: when government employees act within the scope of their official duties and allegedly infringe a copyright, the copyright owner's remedy lies exclusively against the United States and in the U.S. Court of Federal Claims. 28 U.S.C. § 1498(b). The United States has presented its certification that defendant Lazur acted within the scope of his employment at the relevant time. *See* U.S. Mot., Ex. A (Certification by Mark E. Nagle, Acting Chief, Civil Division, United States Attorney's Office). The Attorney General's certification constitutes *prima facie* evidence that the federal employee acted within his scope of employment. *Kimbro v. Velten*, 30 F.3d 1501 (D.C.Cir.1994). This certification notwithstanding, plaintiffs allege that defendant Lazur did not act within his scope of his official duties because he violated federal procurement laws in the performance of his duties. Specifically, defendant Lazur allegedly caused Department contracts to be awarded to defendants in return for a promise of future employment.

Plaintiffs who challenge a certification of the scope of employment have the burden to come forward with evidence supporting their allegations. "If there is a material dispute as to the scope issue the district court must resolve it at an evidentiary hearing." *Id.* at 1509. Plaintiffs proffer affidavits from Frank Freiman and H. Paul Douglas, which state that defendant Lazur sought employment from them. *See* Pls.' Reply (affidavits attached). In his own affidavit, defendant Lazur vigorously denies that he sought employment from either Freiman or Douglas. *See* U.S. Reply Mem., Ex. A at ¶¶ 3, 5 (Edward G. Lazur Decl.).

Assuming for the purposes of this motion that the facts alleged by plaintiffs are true—that defendant Lazur did violate the government procurement laws by awarding contracts in consideration for employment—plaintiffs' argument on the scope of employment issue fails as a matter of law. In the District of Columbia and in the common law of agency generally, the scope of employment is very broad. As the D.C. Circuit has ruled, "the acts of an agent motivated partly by self-interest—even where self-interest is the predominant motive—lie within the scope of employment so long as the agent is actuated by the principal's business purposes 'to any appreciable extent.'" *Local 1814; Int'l Longshoremen's Ass'n v. National Labor Relations Bd.*, 735 F.2d 1384, 1395 (D.C.Cir. 1984). Indeed, according to the Second Restatement of Agency, an act may be within the scope of employment although consciously criminal or tortious. *See* Restatement (Second) of Agency §§ 230, 231 (1957). The undisputed evidence establishes that defendant Lazur awarded Department contracts as part of his job duties and served the Department's business purposes to an "appreciable extent." Accordingly, 28 U.S.C. § 1498(b) applies. The United States is the proper defendant on the claims in Count I that that defendant Lazur infringed or conspired to infringe plaintiffs' copyrights in the FAST computer programs; and subject matter jurisdiction lies exclusively in the U.S. Court of Federal Claims.

### IV.

Defendants Seel, Prime Time, Wohl, and Wohl Associates have filed motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. Following the general practice that "when the [Rule 12(b)] motion is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined," this Memorandum addresses first the defendants' motions to dismiss for lack of subject matter jurisdiction. *See* 5A Wright & Miller, *Federal Practice and Procedure* § 1350, at 209–10 (1990).

Counts II and III of the Complaint allege, in part, that in contracting to develop INSITE, defendants Seel, Prime Time, Wohl, and Wohl Associates infringed plaintiffs' copyrights in FAST. These defendants

move to dismiss these counts for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1498(b), which provides that when a plaintiff sues a government contractor for copyright infringement and the alleged infringement occurred with the authorization and consent of the government, "the exclusive remedy of the owner of such copyright shall be by action against the United States in the Court of Federal Claims." 28 U.S.C. § 1498(b). Defendants Seel and Prime Time allege that "all work that Prime Time conducted on the FAMAS and INSITE programs was as a subcontractor on government contracts with the DOE. Each of those contracts actually or impliedly authorized and consented to the use of Plaintiffs' copyrighted material." Seel Mot. at 3. Therefore, they allege, the proper defendant is the United States, and subject matter jurisdiction exists exclusively in the U.S. Court of Federal Claims.

Defendants Wohl and Wohl Associates similarly argue in their motion to dismiss for lack of subject matter jurisdiction that since plaintiffs allege in their complaint that Wohl and Wohl Associates "are presently involved in contracts with Defendants Seel and Prime Time for the benefit of [the Department]," 28 U.S.C. § 1498(b) applies to them as well. See Compl. ¶ 12; Wohl Mot. at 2.

Plaintiffs contend, however, that the government "has never expressly or impliedly consented to the copyright infringement of Freiman and FPS's work." Pls.' Reply at 3. Rather, the government "contracted with Seel and Prime Time for the development of INSITE which was falsely and fraudulently registered by Seel and Prime Time on June 2, 1994." Id. at 3–4. Plaintiffs argue that this registration is inconsistent with defendants' claim that the government authorized and consented to the infringement because in his copyright registration, defendant Seel attested that "he is the author of the entire work." Id. at 4.

The dispositive issue is whether the government authorized or consented to the alleged copyright infringement. When "the government authorizes an 'action' by a third party, it is not therefore liable for any copyright infringement the third party may choose to undertake within the sphere of the authorized activity. Rather, the statute stands for the more limited proposition waiving immunity for third-party infringements that are authorized or consented to by the government." Auerbach v. Sverdrup Corp., 829 F.2d 175, 179 (D.C.Cir.1987). Without such authorization, Section 1498(b) does not apply and a dismissal based on that section would be inappropriate. Our Court of Appeals has held that the "government waiver of immunity by authorization and consent requires explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability for a specific act of infringement." Id. at 177 (emphasis added). In addition to express documentary evidence indicating authorization, "evidence of implied consent might suffice" as would demonstration that the "government made the infringement necessary by failing to give the contractor discretion to use alternative means that might have avoided infringement." Herbert v. National Academy of Sciences, 974 F.2d 192, 198 n. 7 (D.C.Cir.1992).

In the instant case, the United States has filed a supplemental memorandum in which it states that in 1994 defendants Seel and Prime Time advised the Department that they "were no longer the authorized representatives of plaintiffs with regard to the FAST family of computer models." U.S.' Supp. Mem. at 3. Furthermore, that "[a]fter the filing of this lawsuit, the Department of Energy determined that it would continue with the performance of the contract work by defendants Seel and Prime Time." Id. The Department takes the same position in this litigation: as the "FAST, FAMAS, and INSITE computer programs were developed with U.S. government funds, and with Department of Energy data and technical input, for the use and convenience of the federal government.... [I]t follows from the rights that the government has in the use of these programs that there could not have been any copyright infringement by the work done for the Department of Energy by defendants Seel and Prime Time in connection with the latter's work on INSITE." Id. at 2–3.

If there were a sufficient evidentiary basis for the United States' "position," this would

constitute implied consent as defined by our Court of Appeals. *Herbert,* 974 F.2d at 198. With knowledge of the lawsuit, of plaintiffs' proprietary claims to the FAST family of computer models, and of the fact that defendants Seel and Prime Time were no longer associated with plaintiffs, the Department nevertheless determined that it would continue with defendants' performance of the contract. Similarly, in *Herbert,* our Court of Appeals ruled that because the government was "on notice" of the threatened litigation, "knew of [plaintiff's] claim and wished to proceed with the [allegedly infringing activity] anyway," "authorization was given and § 1498(b) thus triggered." *Id.* at 198–200.

However, defendants proffer no evidence to support these arguments made on their behalf by the United States; nor does the United States proffer any such evidence. As *Auerbach* and *Herbert* make clear, on a motion to dismiss for lack of subject matter jurisdiction on the theory that the government has authorized or consented to an alleged infringement, there must be "explicit acts or extrinsic evidence" of such authorization, or "evidence of implied consent," or a "demonstration that the government made the infringement necessary." Legal arguments do not constitute evidence. Accordingly, defendants Seel, Prime Time, Wohl, and Wohl Associates fail to produce evidence, as required by *Auerbach* and *Herbert,* that the government authorized or consented to the alleged infringement; and their motions to dismiss for lack of subject matter jurisdiction are denied.

## V.

In addition to alleging that the INSITE computer program infringed plaintiffs' copyright in FAST, the Complaint also alleges a number of related pendant claims against defendants Seel, Prime Time, Wohl, and Wohl Associates. Specifically, Counts II, III, and X of the Complaint allege that defendants Seel, Prime Time, Wohl, and Wohl Associates infringed plaintiffs' copyright in FAST by selling MAP and committed the common law torts of intentional interference with business and civil conspiracy. Counts IV, V, VI, VII, and IX of the Complaint

allege that defendants Seel and Prime Time violated the Lanham Act, misappropriated trade secrets, intentionally interfered with contract, and committed fraud and false accounting on contract. Finally, Count VIII of the Complaint alleges that defendant Seel defamed plaintiff Freiman. All of these defendants argue that this court lacks personal jurisdiction over them; and, in the alternative, argue that should personal jurisdiction be established, venue does not lie here.

## A.

None of these defendants resides or is incorporated in the District of Columbia; nor are plaintiffs either residents of or incorporated in the District of Columbia. *See* Compl. ¶¶ 10–13. The Department's office involved in the government contracts in this case is located in Germantown, Maryland. To establish personal jurisdiction, plaintiffs must show that defendants had the requisite minimum contacts with the District. The District of Columbia "long-arm" statute enumerates the possible bases for personal jurisdiction over nonresidents. D.C.Code Ann. § 13–423. Section 423(a)(1) extends personal jurisdiction to persons "transacting any business in the District of Columbia"; and Section 423(a)(3) extends personal jurisdiction to persons "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C.Code Ann. §§ 13–423(a)(1), (3). Section 423(b) limits these two bases for jurisdiction: "only a claim for relief arising from the acts enumerated in this section may be asserted against [the defendant]." Therefore, Section 423(b) bars claims unrelated to the acts forming the basis for personal jurisdiction. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 785 (D.C.Cir.1983).

Under the District of Columbia long-arm statute, plaintiffs have the burden of demonstrating a factual basis for the exercise of personal jurisdiction over the defendants. *First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1378 (D.C.Cir.1988). In attempting to satisfy this burden, plaintiffs may not rest on bare allegations or conclusory statements alone and must make at least a *prima facie* factual showing. In determining

whether such a factual basis exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C.Cir.1990).

In the instant case, plaintiffs allege several grounds for subjecting defendants Seel, Prime Time, Wohl, and Wohl Associates to personal jurisdiction in the District. First, in support of their argument that defendants' contacts satisfy Section 423(a)(3), i.e., that defendants Seel, Prime Time, Wohl, and Wohl Associates "did in fact conspire, act and cause injury in the District of Columbia," plaintiffs allege that on September 13, 1994, defendants Seel and Wohl and others met for lunch at Union Station and that this lunch was an "overt act in an ongoing conspiracy." *See* Pls.' Reply at 14, 7. Second, plaintiffs contend that defendants Seel and Prime Time's registration of copyright for the IN-SITE computer program at the U.S. Copyright Office in Washington, D.C. constitutes "transacting business" under Section 423(a)(1). *See* Pls.' Resp. at 9. Third, defendants Seel and Prime Time's "numerous substantial contacts in the District of Columbia in promoting their business activities over the years" also constitute "transacting business" under Section 423(a)(1). Pls.' Resp. at 11.

### B.

■ Section 423(a)(3) is a "precise and intentionally restricted tort section," which confers jurisdiction "only over a defendant who commits an act in the District which causes an injury in the District, without regard to any other contacts." *Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 221 (D.C.Cir.1986). Plaintiffs allege that the September 13, 1994 lunch at Union Station, which defendants Seel and Wohl attended, was an "overt act in an ongoing conspiracy" and therefore constitutes a tortious act occurring in the District. Pls.' Reply at 7. To support this contention, plaintiffs proffer the affidavits of H. Paul Douglas, who was present at this lunch. *See* H. Paul Douglas Aff., June 22, 1995 (Pls.' Resp., Ex. A); H. Paul Douglas Aff., filed July 10, 1995, attached to Pls.' Reply. In his affidavits, Douglas states

that "business was the only thing that was discussed at that luncheon." H. Paul Douglas Aff., filed July 10, 1995, at 4. Among other things, Douglas and defendants Wohl and Seel "sat and discussed the fact that Richard Seel had registered a copyright of INSITE" and also discussed the implications of "the letter from Freiman and FPS," which stated that "Richard Seel, RFS, Pierre Foussier and Prime Time were no longer affiliated with Freiman and FPS." *Id.* More pointedly, Douglas states that "at this [lunch] which lasted over two hours, there was much discussion and decisions were made as to what was to be said to Edward Lazur in the upcoming meeting at the Department of Energy in Edward Lazur's office. The purpose of this meeting was to assure Edward Lazur that Pierre Foussier was capable of engineering the parametric computer program now called INSITE.... [and] to have Edward Lazur direct monies to be paid to Prime Time on the FAMAS project." *Id.* at 5.

Defendants Seel and Wohl contest this version of the September 13, 1994 lunch at Union Station. Seel states that "[w]hile we discussed the parametric industry generally, there was no discussion of substantive business, of any plan of action or of any cooperative action by anyone at the meeting." Richard F. Seel Decl., June 17, 1995, at 5 (Seel Mot., Ex. 1). It was a "social gathering." *Id.* Wohl states that "[n]o substantive business decisions were made or even raised" at the lunch. Kay Hudson Wohl Decl., June 29, 1995, at 2 (Wohl Reply, Ex. 1). Although the people who were at the lunch disagree on what was said there, any "factual discrepancy" in the record must be resolved in favor of the plaintiff. *Crane*, 894 F.2d at 456. For purposes of this motion, then, the H. Paul Douglas Affidavits satisfy plaintiffs' burden of showing a "tortious act" in the District.

■ However, Section 423(a)(3) also requires that, in addition to a tortious act occurring in the District, there be "tortious injury in the District of Columbia" as well. D.C.Code Ann. § 13–423(a)(3); *see Gandal v. Telemundo Group, Inc.*, 997 F.2d 1561, 1565 (D.C.Cir.1993). Our Court of Appeals reads Section 423(a)(3) as requiring "more than an

'act' that causes harm in the District; it requires that both the 'act' and the injury occur in the District. Therefore, it would be playing word games with the statute to say that 'act' occurs wherever the 'injury' it causes takes place." *Reuber v. United States*, 750 F.2d 1039, 1049–50 (D.C.Cir. 1984). On this point, plaintiffs allege that injury occurred in the District because "[t]he approval for the contracts and the monies for the approved contracts from which the Defendants are profiting comes from the headquarters of the Department of Energy in Washington, D.C." Pls.' Resp. at 7–8. However, plaintiffs fail to demonstrate a *prima facie* showing of the "pertinent jurisdictional facts" to support this allegation. *See First Chicago Int'l*, 836 F.2d at 1378. Indeed, plaintiffs' allegation on this point is seemingly contradicted by the evidence they proffer. Plaintiffs' contact with the Department was defendant Lazur, the Acting Director of the Department's Office of Construction and Capital Projects. His office is in Germantown, Maryland. *See* Compl., Ex. R. Plaintiffs entered into the FAMAS contracts not with the Department directly, but with the Department's prime contractor, Kaiser Engineers. Kaiser Engineers is located in Richland, Washington. *See* Pls.' Reply, Exs. 22–24 (copies of the FAMAS contracts). Plaintiffs contend that after the September 13, 1994 lunch, defendant Lazur caused $180,000 to be transferred to defendants Seel and Prime Time. The source of the $180,000 was Richland, Washington: on "October 21, 1994, Defendant Lazur sent a memo to the Project Management Division and the Program Budget Branch in Richland, Washington for the transfer of funds from the Freiman Parametric Services [sic] contract to Defendant Prime Time for $180,000 for defendant Prime Time's generation of a proposal." Compl. at ¶ 78; Ex. X. Plaintiffs further allege that defendants Seel, Prime Time, Wohl, and Wohl Associates entered into the contract for the allegedly infringing INSITE program with the Department's subcontractor, Dames & Moore. Compl. at ¶ 79. The Dames &

Moore office that dealt with defendants is located in Denver, Colorado. Pls.' Reply, Ex. 35 (letter from Dames & Moore to defendant Seel on Dames & Moore's fax letterhead).

On these facts, plaintiffs fail to make the requisite *prima facie* showing that tortious *injury* occurred in the District, although plaintiffs have met their burden to make a *prima facie* showing that a tortious *act* occurred in the District. Accordingly, there is no personal jurisdiction over defendants Seel, Prime Time, Wohl, and Wohl Associates under Section 423(a)(3).[1]

### C.

██ Personal jurisdiction may be exercised over defendants, therefore, only if they "transacted business" in the District in connection with the operative facts of this action under Section 423(a)(1) and only if plaintiffs' claims arise from defendants' contacts with the District. *See* D.C.Code Ann. § 423(b); *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981). Plaintiffs allege that defendants Seel and Prime Time have had "not a few, but numerous substantial contacts in the District of Columbia in promoting their business activities over the years." Pls.' Resp. at 11. First, in October 1987, Seel "sat in on training sessions given by Frank Freiman" at Department headquarters in the District; second, in June 1989, a Prime Time employee was awarded the "Best Speaker Award" at a meeting in Washington, D.C.; third, Seel registered a copyright for INSITE at the U.S. Copyright Office in Washington, D.C.; and fourth, on March 25, 1994 Seel met with Lazur at Department headquarters in Washington, D.C. and telephoned H. Paul Douglas from the headquarters' lobby. *See id.* at 11, 8; Pls.' Reply at 27.

As a preliminary matter, the first two contacts cannot form the basis for asserting jurisdiction over defendants Seel and Prime Time. Under Section 423(b), plaintiffs' claims "must relate to the particular act or transaction forming the basis for personal

---

1. Plaintiffs also allege, but only as an aside, that they suffered reputational injury in the District: "Specifically, aside from the reputational injury to the plaintiffs in many forums, including the District of Columbia...." Pls.' Reply at 14. There is no factual basis or proffer for this allegation; accordingly, plaintiffs fail to carry their burden on this theory.

jurisdiction." *See Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C.1979). Plaintiffs do not allege any such relation between a "Best Speaker Award" and an October 1987 training session, which defendant Seel "sat in on," and their claims of copyright infringement.

■■■ The third contact is defendant Seel's registration of the copyright for INSITE at the U.S. Copyright Office in Washington, D.C. on June 2, 1994. Plaintiffs allege that this constitutes "transacting business" in the District under Section 423(a)(1) and that, in fact, "personal jurisdiction exists on these facts alone." *See* Pls.' Resp. at 9, 11. Defendants Seel and Prime Time respond that defendant Seel's registration of the copyright is protected by the government contacts principle and therefore cannot serve as a basis for personal jurisdiction. *See* Seel Reply at 8–9.

■■■ The government contacts principle establishes that entry into the District by nonresidents for the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction. *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C. 1976). Because the District is the seat of national government, there is a "correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Id.* at 813. To allow a defendant's contact with a federal instrumentality to serve as a contact for personal jurisdiction analysis "would threaten to convert the District of Columbia into a national judicial forum." *Id.* Applying this principle, this Court in *Investment Co. Institute v. United States*, 550 F.Supp. 1213, 1217 (D.D.C.1982) (Jackson, J.), held that defendants' filings with the Securities and Exchange Commission and application for membership in the National Association of Securities Dealers were protected by the government contacts principle and therefore were excluded from any calculation in determining defendants' amenability to suit here.

Plaintiffs argue that the government contacts principle does not apply if the contacts are "fraudulent in and of themselves and are found to cause harm to the plaintiff" and cite the D.C. Court of Appeals' case, *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244 (D.C. 1990), to support this proposition. *See* Pls.' Resp. at 9. *Lex Tex* is easily distinguishable. There, a Pennsylvania lawyer retained by a Florida corporation to prosecute a patent application before the Patent and Trademark Office in the District engaged in inequitable conduct, and the patent was subsequently invalidated for that reason. Thereafter, the Florida corporation sued the lawyer for malpractice in the District and asserted personal jurisdiction on the basis of the lawyer's appearance before the Patent and Trademark Office. The defendant lawyer argued that this appearance was protected by the government contacts doctrine. The D.C. Court of Appeals disagreed, holding that the doctrine did not apply because the defendant lawyer contacted the Patent and Trademark Office as an agent for his client, the plaintiff, and not on his own behalf. Therefore, "[t]o the extent, then, that any petitioning of the government was taking place, it was that of the [plaintiff], not [defendant]." *Id.* at 250. By contrast, defendant Seel contacted the U.S. Copyright Office on his own behalf, and not as an agent for any other party. Accordingly, the government contacts principle applies, and defendant Seel's application to the U.S. Copyright Office cannot serve as a basis for asserting personal jurisdiction over him.

■■■ Finally, the remaining contact on which plaintiffs assert jurisdiction based on defendants' "transacting business" in the District is a March 24, 1994 meeting between Seel and Lazur in the Department's headquarters in Washington, D.C. *See* Pls.' Reply at 27; Pls.' Resp., Ex. A (June 22, 1995 H. Paul Douglas Aff.). The "transacting business" provision of the D.C. long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995); *First Chicago Int'l*, 836 F.2d at 1377. The constitutional touchstone of the due process determination is "whether the defendant purposefully established minimum contacts in the forum state." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987)

(internal citations and emphasis omitted). Although "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," the Supreme Court has held that, consistent with due process and "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 & n. 18, 105 S.Ct. 2174, 2183–84 & n. 18, 85 L.Ed.2d 528 (1985) (citing, as support, *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). The Supreme Court has cautioned, however, that

> "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum. This distinction derives from the belief that, with respect to this category of "isolated" acts, the reasonable foreseeability of litigation in the forum is substantially diminished.

*Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)) (internal citations omitted). District of Columbia courts have held that a "single act in the jurisdiction by defendant, under some circumstances, may be sufficient to constitute 'transacting business,' and thereby confer jurisdiction." *Mitchell Energy Corp. v. Mary Helen Coal Co., Inc.*, 524 F.Supp. 558, 563 (D.D.C.1981); *Mouzavires v. Baxter*, 434 A.2d 988 (D.C.1981) (en banc). However, "single contacts with the jurisdiction which are insignificant in the scheme of the parties' dealings will not support jurisdiction." *Mitchell Energy*, 524 F.Supp. at 564.

As the Supreme Court has often stated, there are no "mechanical" tests for what constitutes a "significant" contact for personal jurisdictional analysis. *See, e.g., Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. Analogy to Supreme Court precedent is useful to this analysis, however. In *Burger King Corp. v. Rudzewicz*, the Supreme Court held that a Florida court had personal jurisdiction over the defendant, a Michigan resident who entered into a "carefully structured 20–year relationship" with Burger King's Florida headquarters but who had no personal contact with Florida. *Id.* at 480, 105 S.Ct. at 2186. The Court noted that because of defendant's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* Similarly, in *Travelers Health Ass'n v. Virginia*, the Court held that a Virginia court had personal jurisdiction over a Nebraska insurance association because the association's insurance certificates, "systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state." 339 U.S. 643, 648–49, 70 S.Ct. 927, 929–31, 94 L.Ed. 1154 (1950) (Black, J.). As our Court of Appeals has recently observed, the Supreme Court "based its findings of jurisdiction in *Burger King* and *Travelers Health* on qualitatively significant contacts with the forum State." *United States v. Ferrara*, 54 F.3d 825, 830 (D.C.Cir.1995).

In the instant case: assuming as true plaintiffs' allegation, supported by an affidavit by H. Paul Douglas, that defendants Seel and Lazur met on March 24, 1994 in the District, that meeting is neither "qualitatively significant" nor significant "in the scheme of the parties' dealings." It is undisputed: first, that all of the contracts at issue here—defendants' contracts with government contractors, Kaiser Engineers and Dames & Moore, and with plaintiffs—were executed and performed outside of the District of Columbia; second, that these government contractors do not have offices in the District; third, that defendant Lazur's office and the headquarters of the Department's Office of Capital Projects and Construction is in Germantown, Maryland; and fourth, all of the parties reside and work outside of the District of Columbia. Given these undisputed facts, the alleged March 24, 1994 meeting does not constitute a " 'substantial connection' with the forum"—and plaintiffs do not allege that it does. Moreover, compared with the "carefully structured 20–year rela-

tionship" in *Burger King* and the "systematically and widely delivered" insurance certificates in *Travelers Health,* a single meeting on March 24, 1994 does not rise to the level of a "qualitatively significant" contact; nor does it rise to the level of a comparatively significant contact in the parties' course of dealing, in light of the undisputed fact that the contracts at issue here were executed and performed outside of the District.

Accordingly, there is no personal jurisdiction under Section 423(a)(1) over defendants Seel and Prime Time.

## D.

Plaintiffs also allege that personal jurisdiction exists over defendants Wohl and Wohl Associates because, pursuant to Federal Rule of Civil Procedure 4(k), "[s]ervice of a summons ... is effective to establish jurisdiction over the person of a defendant ... who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues." Fed.R.Civ.P. 4(k)(1)(B); Resp. to Wohl's Mots. to Dismiss at 2. Rule 19 provides for joinder of parties if "in the person's absence complete relief cannot be accorded *among those already parties."* Fed.R.Civ.P. 19(a)(1) (emphasis added). Plaintiffs allege that defendants Wohl and Wohl Associates are parties joined under Rule 19 and further allege that they served Wohl and Wohl Associates within 100 miles of this courthouse. *See* Compl. ¶ 8; Pls.' Resp. to Wohl Mot. at 7.

■ Recently added to the Federal Rules of Civil Procedure in 1993, Rule 4(k) "explicitly authorizes the exercise of personal jurisdiction over those who can be reached under a state's long-arm statute, *the 100–mile provision,* or the Federal Interpleader Act." *See* 4A Wright & Miller, *Federal Practice and Procedure* § 1124 (1995 Supp.) (emphasis added). Therefore, if a party lacks minimum contacts with the forum state, yet has minimum contacts with the 100–mile "bulge area," measured by a 100–mile radius from this courthouse, this Court has personal jurisdiction over the party pursuant to Rule 4(k)(1)(B) and Rule 19. *See, e.g., Quinones*

*v. Pennsylvania General Ins. Co.,* 804 F.2d 1167, 1173–74 (10th Cir.1986) (collecting cases). As the 10th Circuit has observed, "it is a fairly rare occurrence that a party of the circumscribed class described in Rule 4(f) [now Rule 4(k)(1)(B) ] would fail to have minimum contacts with the forum state ... yet have such contacts with the 100–mile bulge area." *Id.* The parties fail to cite any case in this Circuit interpreting Rule 4(k)(1)(B)'s 100–mile provision, and independent research discloses none.

■ Even if defendants Wohl and Wohl Associates have minimum contacts with the 100–mile bulge area so as to satisfy due process, the predicate for applying Rule 4(k)(1)(B) is Rule 19, which provides for joinder of parties if "in the person's absence complete relief cannot be accorded *among those already parties."* Fed.R.Civ.P. 19(a)(1) (emphasis added). The important language here is "among those already parties": it reflects the purpose of joinder "to promote the full adjudication of disputes with a minimum of litigation effort." 7 Wright & Miller, *Federal Practice and Procedure* § 1602 (1986). Joinder adds or brings in certain persons to an action whose presence is desirable to promote litigation that is binding on all concerned. However, an accompanying Order grants the other defendants' motions to dismiss for lack of subject matter jurisdiction and for lack of personal jurisdiction. Therefore, there is no litigation or party for defendants Wohl and Wohl Associates to join. Accordingly, defendants Wohl and Wohl Associates are not Rule 19 parties, and Rule 4(a)(1)(B) does not effect personal jurisdiction over these defendants here.

## VI.

An accompanying Order grants the United States' motion to be substituted for defendant Lazur; grants the United States' motion to dismiss for lack of subject matter jurisdiction; grants defendants Seel and Prime Time's motion to dismiss for lack of personal jurisdiction; and grants defendants Wohl and Wohl Associates' motion to dismiss for lack of personal jurisdiction. Although the Order denies defendants Seel, Prime

Time, Wohl, and Wohl Associates' motions to dismiss for lack of subject matter jurisdiction, the complaint is nevertheless dismissed because of the disposition of defendants' motions to dismiss for lack of personal jurisdiction.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 29th day of April 1996 hereby

ORDERED: that the United States' motion to substitute the United States for defendant Edward G. Lazur should be, and is hereby, GRANTED; and it is further

ORDERED: that the United States' motion to dismiss the complaint should be, and is hereby, GRANTED; and it is further

ORDERED: that defendants Seel and Prime Time's motion to dismiss the complaint for lack of subject matter jurisdiction should be, and is hereby, DENIED; and it is further

ORDERED: that defendants Seel and Prime Time's motion to dismiss the complaint for lack of personal jurisdiction should be, and is hereby, GRANTED; and it is further

ORDERED: that defendants Wohl and Wohl Associates' motion to dismiss the complaint for lack of subject matter jurisdiction should be, and is hereby, DENIED; and it is further

ORDERED: that defendants Wohl and Wohl Associates' motion to dismiss for lack of personal jurisdiction should be, and is hereby, GRANTED; and it is further

ORDERED: that the complaint should be, and is hereby, DISMISSED.